PAUL ANTHONY MARTIN
Acting United States Attorney
District of Arizona
ERICA McCALLUM
Assistant U.S. Attorney
State Bar No. 022585
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: erica.mccallum@usdoj.gov
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson,<br><br>   Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>   Defendant. | CV 19-00422-TUC-RM<br><br>**MOTION FOR SUMMARY JUDGMENT REGARDING FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES** |

Defendant United States, through undersigned counsel, moves for summary judgment on Plaintiff's Federal Tort Claims Act (FTCA) claim.[1] Plaintiff filed an administrative tort claim, but the claim substantively differs from the claim in the federal action. Thus, she did not administratively exhaust her tort claim, and the court lacks subject matter jurisdiction to hear the claim.

This motion is supported by the accompanying Memorandum of Points and Authorities, Defendant's Statement of Facts ("DSOF"), and all matters of record.

---

[1] On February 24, 2021, Defendant moved to dismiss Plaintiff's state law claims for lack of supplemental and subject matter jurisdiction. (Doc. 39.)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. The Administrative Tort Claim

Jeremy "Grace" Pinson (Plaintiff) is a federal inmate who was previously incarcerated at the United States Penitentiary in Tucson, Arizona (USP Tucson) from February 15, 2018 until being transferred to another institution on December 4, 2020. DSOF ¶ 1. Relevant to the allegations in this case, from June 30, 2019 through July 12, 2019, Plaintiff was housed in cell Z02-140, in USP Tucson's Special Housing Unit (SHU). *Id*. ¶ 2.

On August 12, 2019, Plaintiff filed a SF-95 administrative tort claim relating to a July 12, 2019 incident in which Plaintiff reported being assaulted by another inmate. *Id*. ¶ 3.

The BOP issued a final denial this claim on July 31, 2020, denying the claim for lack of any "any evidence of negligence or other conduct for which the United States is liable." *Id*. ¶ 4.

The Claim for Damage, Injury, or Death (SF-95) asserted that Plaintiff was placed into a SHU cell on June 30, 2019. *Id*. ¶ 5. According to Plaintiff, "the cell was not equipped with a duress alarm. Multiple requests to fix the alarm were not acted upon by staff. On [July 12, 2019], my cellmate attempted to sexually assault me and brutally beat me with closed fists and feet. As a result of no duress alarm I was helpless to summon staff assistance." *Id*. Plaintiff alleged that she sustained serious injuries and sought $299,999. *Id*. ¶ 6.

## II. Count Three Should Be Dismissed for Lack of Subject-Matter Jurisdiction

### A. Legal Standard

"Federal courts are courts of limited jurisdiction . . . . It is to be presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal quotations omitted). The FTCA authorizes tort actions against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011) (*quoting* 28 U.S.C. § 1346(b)(1)). Notwithstanding this waiver of sovereign immunity, a plaintiff cannot commence an action under the FTCA unless she has presented the claim to the appropriate Federal agency and the claim is "finally denied by agency in writing and sent by certified mail" or the agency fails to make a "final disposition of the claim within six months after it is filed." 28 U.S.C. § 2675(a). The administrative claim requirement is jurisdictional and must strictly be construed in favor of the United States. *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006); *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000); *Cadawalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995). As the Supreme Court has succinctly held: "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S.106, 113 (1993).

The Ninth Circuit has held that "section 2675(a) requires the claimant or the claimant's legal representative to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Cadawalder*, 45 F.3d at 301 (citing *Warren v. United States Dept. of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984)); *see also, Avery v. United States*, 680 F.2d 608, 611 (9th Cir. 1982) ("where a claimant gives notice of the manner and general circumstances of injury and the harm suffered, and a sum certain representing damages, he has complied with section 2675(a)"). The policies underlying the claim process encourage realistic valuation of a claim against the government in aid of early settlement. *Resnansky v. United States*, No. 13-cv-05133-DMR (N.D. Cal. 2015) (unpublished), available at 2015 WL 1968606 at *4. One of the purposes of the FTCA is

"allowing the government to know at all relevant times its maximum possible exposure to liability and make a realistic assessment of the settlement value of the case." *Id*.

Under this standard, Plaintiff failed to present the allegations she raises in Count Three to the Bureau of Prisons, and she therefore has failed to exhaust her administrative remedies.

## B. The Court Lacks Subject-Matter Jurisdiction over the FTCA Claim Because Plaintiff Failed to Exhaust Her Administrative Remedies.

Plaintiff's SF-95 does not contain any of the causation allegations that appear in Count Three of her First Amended Complaint.[2] Specifically, Plaintiff alleges in Count Three that she was placed in SHU on June 13, [2019] on "false charges," that BOP Officers Shields, Dukett, and Schneider "continued to harassed her" by "loudly call[ing] Plaintiff a 'snitch' in front of other inmates. (Doc. 22 at 5.) Plaintiff alleges in Count Three that on or about July 12, 2019, her cellmate accused her of "being a 'snitch' and cited Shields, Dukett, and Schneider's calling her one." (*Id*.) According to Count Three, Plaintiff asked her cellmate "to calm down and handed a note to Officer Vasquez that stated, 'I need a new cellmate, I am in fear for my life,' but Vasquez did nothing despite being required by BOP policy to separate them." (*Id*.)

Count Three continues, "On [Officer Vasquez's] next round, [Plaintiff] handed him "a second note seeking his supervisor because the cellmate . . . had threatened to rape her. Again Vasquez failed to follow the PREA policy to separate her. Late that evening [the cellmate] attacked and tried to rape [Plaintiff], beating her with closed fists for nearly ten minutes while she screamed for help but none came to help her." (*Id*.) According to Plaintiff in Count Three, "Eventually staff conducted a round and observed [Plaintiff's] injuries," and obtained her transport to the Emergency Department for medical treatment. (*Id*.)

---

[2] The SF-95 also does not contain the allegations in dismissed Counts One and Two (irrelevant as they may be), which Plaintiff incorporated by reference into Count Three.

Thus, according to Plaintiff in Count Three, the alleged assault and injuries were caused by (1) particular named staff members harassing Plaintiff by loudly calling her a "snitch" in front of other inmates, thereby leading Plaintiff's cellmate to call her a snitch, and (2) Officer Vasquez's alleged failure to follow PREA policy in response to Plaintiff's two notes saying that she was in fear for her life and that her cellmate had threatened to rape her. While Count Three references the cell's alleged lack of an in-cell duress alarm, there is no claim the Plaintiff or anyone else brought the lack of alarm (or possibly disrepair) to BOP's attention prior to the July 12th incident. Moreover, Plaintiff does not identify the alleged lack of an alarm as the cause of the cellmate's attack or a factor in Plaintiff's injuries.

Plaintiff's SF-95, on the other hand, named no BOP employees. Ex. A, Att. 1. It identified no harassment, name-calling, or action/inaction by any particular BOP Officer. *Id*. It said nothing about any threats by the cellmate, and did not mention any attempt by Plaintiff to pass notes or request assistance in response to any threats. In fact, the SF-95 did not even name the cellmate. The SF-95 suggests the attack came out of the blue and places blame only on the alleged lack of a duress alarm: "As a result of no duress alarm, I was helpless to summon staff assistance." *Id*.

The claims in Plaintiff's SF-95 cannot reasonably be expected to have prompted the Bureau of Prisons to inquire as to whether the alleged actions of Officers Shields, Dukett, and Schneider motivated the cellmate's attack, or whether Officer Vasquez had reason to separate Plaintiff from her cellmate to avoid an assault. The SF-95 was insufficient to "enable the agency to begin its own investigation" into the allegations that appear in Count Three. *Cadawalder*, 45 F.3d at 301.

When compared side-by-side, the significant, substantive differences between the SF-95 and the allegations in Count Three raise the question of whether these two

descriptions even involve the same event.[3] *See, e.g., Blair v. I.R.S.*, 304 F.3d 861, 868-69 (9th Cir. 2002) (dismissing portions of complaint not properly presented to the agency in an administrative claim). Having failed to spell out the allegations in her SF-95 with sufficient detail for BOP to make sufficient inquiry to be able make a realistic valuation of her claim in aid of early settlement, it would violate public policy for Plaintiff to now, through the litigation process, add previously undisclosed material allegations. *Resnansky v. United States*, No. 13-cv-05133-DMR (N.D. Cal. 2015), available at 2015 WL 1968606 at *4.

The Court lacks subject-matter jurisdiction over the newly described claim Count Three, and it should be dismissed. *McNeil*, 508 U.S. at 113; *Vacek*, 447 F.3d at 1250; *Brady*, 211 F.3d at 502; *Cadawalder*, 45 F.3d at 300.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's FTCA claim should be dismissed.

Respectfully submitted this 2nd day of March, 2021.

> PAUL ANTHONY MARTIN
> Acting United States Attorney
> District of Arizona
>
> *s/Erica McCallum*
>
> ERICA McCALLUM
> Assistant U.S. Attorney

---

[3] Asking whether a different litigant's SF-95 and Count Three describe the same event might raise a skeptical judicial eyebrow. This inmate, however, has the unique circumstance of multiple prior and subsequent altercations with other inmates (which ultimately resulted in Plaintiff's transfer out of USP-Tucson), as well as a history of 1,000-plus administrative claims and hundreds of lawsuits. (*See, e.g.*, Doc. 7 at 2). In light of all of this, the question is a legitimate inquiry.

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, I served the attached document by U.S. mail on the following, who is not a registered participant of the CM/ECF System:

Jeremy Pinson
Register No. 16267-064
USP Coleman II
U.S. Penitentiary
P.O. Box 1034
Coleman, FL 33521
*Prisoner Pro Se*

s/ L. Startup
/Motion for Summary Judgment