United States District Court
District of Arizona

Jeremy Pinson,

V.

United States of America

Case No. CV-19-00422

FILED ✓ — LODGED
RECEIVED — COPY

MAR 1 2 2021

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY____ DEPUTY

Opposition to Motion For Summary Judgment Regarding Exhaustion (Doc. 42)

(ORAL ARGUMENT REQUESTED)

Comes now the plaintiff pro se, and opposes the latest Motion seeking to avoid a trial on the Merits (Doc. 42), this time about, an alleged lack of detail, administrative remedy filings.

I. Standard of Review

Exhaustion of administrative remedies is an affirmative defense that must be pled and proved by defendant. See Jones v. Bock, 549 U.S 199 (2007). Prison officials must supply a remedy was available, capable of use, and that a prisoner intentionally failed to do so for the defense to apply. Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014). Summary judgement is appropriate only if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. Id. at 1166, 1168; Fed.R.Civ.P. 56(a)

II. Arguments

A. Summary Judgment:

A Motion for summary judgment is only appropriate

1

Where the facts viewed in the light <u>most favorable</u> to the prisoner
See Pinson v. U.S. Dept. of Justice, Case No. 19-CV-235-RM, ECF
No. 43 at 3 (D. Ariz., Aug. 13, 2020), this does not mean as is
the attempt here that defendants can baselessly seek to
do the opposite - seek it be viewed in the light most favorable
to them alone.

## B. The BOP's FTCA Policy

Defendant is correct, plaintiff is familiar with BOP policies.
(Doc. 42, P.6, fn. 3). So, relevant policies and details defendant
omits plaintiff will supply.

BOP Program Statement 1320.06 entitled "Federal Tort Claims
Act" outlines the procedures BOP must follow to process the kind
of claims plaintiff submitted in this case. At Section 8, relying
on 28 C.F.R. 543.32(a), BOP policy states:

"If you fail to provide all <u>necessary</u> information, your will
be rejected and returned to you requesting supplemental
information". (emphasis added).

At Section 7, it states:

"Claims will not be closed until they are either settled,
denied, rejected, or transferred ~~are~~ to another agency
pursuant to 28 U.S.C. 14.2"

At 28 C.F.R. 543.32 (c) is the requirement to <u>investigate</u>
Claims submitted.

2

## C. The PLRA

The Supreme Court has ruled that a prison system's policy governs "The level of detail necessary in a grievance to comply with the grievance procedures ... and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 219 (2007).

## D. Discussion

The plaintiff was housed in a cell with a sexual predator named Darnell Brown - who had violently assaulted a transgender inmate named Dustin Sharp - when USP Tucson staff assigned a violent sexual predator to replace him hours after the second sexual predator was brought to the SHU for assaulting a mentally ill inmate. Days later prison officials assigned him and plaintiff to a cell missing the <u>only</u> duress alarm in the entire SHU. Not long after, plaintiff was brutally beaten and she filed a federal tort claim (see Doc. 42 at 2). It is that claim at the core of the latest attempt to evade a trial on the merits, the last failed attempt was the attempt to revoke IFP status (Doc. 37). They also seek to stay discovery (Doc. 44) to delay the deadlines the court just set (Doc. 41) four days prior to the latest roadblock (Doc. 42). There a multitude of reasons why the Motion (Doc. 42) is not meritorious, as follows hereafter:

3

1. Defendant claims "there is no claim the Plaintiff or anyone else brought the lack of alarm (or possibly disrepair) to BOP's attention prior to the July 12th incident." (Doc. 42 at 5). Not true. Defendant's own submission of plaintiff's tort claim refutes this, as defendants' Statement of Fact No. 5 states "Multiple requests to fix the alarm were not acted upon by staff." (Doc. 43 at 2).

2. Defendant claims "Plaintiff does not identify the alleged lack of an alarm as the cause of the cellmate's attack or a factor in plaintiff's injuries." (Doc. 42 at 5). Also not true. Defendant's own submission of plaintiff's tort claim refutes this as its Statement of Fact No. 5 states, "As a result of no duress alarm I was helpless to summon staff assistance." (Doc. 43 at 2). Further, plaintiff never complained that Makhimetas' assault was rooted in the lack of an alarm because the notion that prisoners attack one another because of a cell's disrepair is facially absurd (not to mention untrue, if asserted).

3. Defendant claims "Plaintiff's SF-95, on the other hand, named no BOP employees." (Doc. 42 at 5). News flash: the Supreme Court ruled 14 years ago names are not required in a grievance for exhaustion to be met. See Jones v. Bock, 549 U.S. 199 (2007). And even if defendant properly pled the legal standard, it still would've been factually untrue. (See Doc. 43, Ex. A, Att. 1 at Sec. 11 "Witnesses" listing 4 staff names).

4. Defendant argues plaintiff's claim "was insufficient to enable the agency to begin its own investigation" (Doc. 42 at 5). Also, not true. The SF-95 identified the date of

4

the incident (Doc. 43-2 at 2)(listing "Friday July 12, 2019"), the time (id., listing "9:20 PM"), Claimant's name (id., listing plaintiff), the location (id., listing "cell 140 on B-Range in USP Tucson"), the names of 9 inmate and 4 staff witnesses (id.), the perpetrator (id., listing "my cellmate"). A "grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievant need do is object intelligibly to some asserted shortcoming." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002); accord, Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)("A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Kikumura v. Osagie, 461 F.3d 1269, 1283 (10th Cir. 2006); and Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004). The Court is well-familiar with the defense tactic of seeking relief under 42 U.S.C. 1997e(a) with no basis in law or fact to be doing so. See Pinson v. U.S. Dept. of Justice, Case No. 19-cv-235-RM, ECF No. 49 (D. Ariz., Feb. 18, 2021) ("While defendants disagree with the Court's analysis of the law, Defendants make no showing that the Court committed an error of law"). It should fail in this case too.

5. The doctrine of estoppel precludes defendants exhaustion argument. There is no question that BOP policy, not the fancy footwork of the U.S. Attorney's office dictates how an FTCA claim is processed. The BOP did not raise any issues about the level of detail while processing the claim as 28 CFR 543.32(a) makes clear if BOP is not provided the "all necessary information" a claim "will be rejected and returned". Thus, the regulation's plain language makes clear that the letter dated July 31, 2020 (Doc. 43-3 at 2) was decided on the basis of "all necessary information" because it was not rejected. id. BOP did not seek more information nor did it reject the request as inadequately detailed as it now seeks to argue. It chose among the options of disposing the claim as "settled, denied, rejected or transferred" (Program Statement 1320.06, Sec. 7) to neither settle, reject nor transfer. Thus it is estopped from now seeking the relief in this Motion. See Hemphill v. New York, 380 F.3d 680, 688-69 (2d Cir. 2004).

6. In the event the Court does not deny the motion on the aforegoing grounds, plaintiff seeks limited discovery and an evidentiary hearing. The Motion states "The SF-95 was insufficient to *enable the agency to begin its own investigation" (Doc. 42 at 5) yet the evidence submitted states an "Investigation fails to disclose any evidence of negligence" in denying the claim. (Doc. 43-3 at 2). And the

BOP's policy outlines an extensive process in investigating claims presented. See Program Statement 1320.06 and 28 CFR 543.32(c). The claim was stamped received on "Aug. 12, 2019" (Doc. 43-2 at 2) but was not denied until nearly a year later (and well after the 180-day time limit) (Doc. 43-3 at 2). Discovery on exhaustion is permissible to resolve the issue of whether or not BOP actually investigated the claim. See Albino v. Baca, 747 F.3d at 1170. Also, Doc. 44 at 2 citing Albino on "discovery to evidence concerning exhaustion." Whether an agency follows its own policies in investigating tort claims is absolutely relevant to the question squarely presented here, • Was the detail of the SF-95 sufficient to permit defendant "to know at all relevant times its maximum possible exposure to liability and make a realistic assessment of the settlement value of the case"? (Doc. 42 at 4)(citing Reonansky v. United States, 2015 WL 1968606 at *4 (N.D.Cal. 2015)). The only way to truly answer that is to delve into the investigation itself that led to denial of settlement. Did BOP interview the 13 witnesses (inmates and staff) plaintiff's claim outlined? Was the missing duress alarm "missing" or just in "disrepair" as AUSA McCallum suggests? (Doc. 42 at 5). Did the attack come "out of the blue" (id.) and place "blame only on the alleged lack of a duress alarm" as AUSA McCallum suggests? Or did the claim itself make clear that the attack was motivated by an attempted sexual assault? Since BOP cells house only 2 inmates did the

investigation (1) determine who was assigned to cell 140 on July 12, 2019 with plaintiff, (2) determine the cellmate had a history of sexual predation prior to assaulting plaintiff, (3) determine how a violent sex offender was placed into a cell with a transgender inmate despite clear policies strongly discouraging such housing? (4) did BOP SHU staff issue a "work order" for cell 140 prior to July 12, 2019 and how long prior? (5) did SHU post-orders get followed in housing Pinson and Makhmetas together? The many avenues, questions and answers a basic investigation would entail are logical from the SF-95 itself (Doc. 43-2 at 2) and the BOP's policy suggests an investigation and settlement analysis would have involved an investigator, BOP Legal Staff, and staff ranging from the Warden to multiple attorneys (the denial letter lists 2 attorneys)(Doc. 43-3 at 2) of a federal agency. See Program Statement 1320.06 Thus, only with the full body of evidence, factual conclusions, and internal deliberative documents or communications can the Court fully determine what was known when the denial (Doc. 43-3 at 2) was issued. Because only such an investigation file can fully resolve whether BOP knew "at all relevant times its maximum possible exposure to liability" and based on its investigation of the SF-95 was it able to "make a realistic assessment of the settlement value of the case" (Doc. 42 at 4). Only with such discovery can it be understood why the SF-95 was denied rather than rejected? Only with such discovery can it be understood why the investigation took nearly a year exceeding the 180-day time limit to reach a denial when defendant now claims it lacked sufficient detail

8

"to enable the agency to begin its own investigation" (Doc. 42 at 3 (emphasis added) when the record showed a denial based on what an "investigation revealed" (Doc. 43-3 at 2). Defendant claims it both lacked detail to "begin" an investigation while submitting evidence it began and concluded a nearly year-long investigation. (Compare Doc. 42 at 3, with Doc. 43-3 at 2).

Defendants opened this door. Should it be necessary to delve into all this to resolve the Meritless Motion (Doc. 42) Albino allows such limited discovery as to exhaustion.

7. Should the Court Order limited discovery it should appoint an attorney to help conduct it. 28 U.S.C. 1915(e)(1) permits such appointment, and ongoing retaliation and interference warrant appointment. This is because:

   (a) Plaintiff is being harrassed daily about her access to a law library terminal that 28 CFR 543.11(j) requires a Warden give her "special time allowance for research and preparation of documents" (██████████████),

   (b) Plaintiff has inconsistent access to outgoing legal mail because defendant lacks a legal "mail depository" required by 28 CFR 540.11 and the person responsible for taking her legal mail refuses to do so. (███████████).

   (c) Plaintiff has no access to administrative review of her retaliation and interference complaints. (██).

Such behavior and the likely security concerns of plaintiff obtaining the discovery she seeks support appointment. See e.g. Agyeman V. Corr. Corp. of America, 390 F.3d 1101, 1104 (9th Cir. 2004).

## Conclusion

The Motion (Doc. 42) should be summarily denied. If it is not, counsel should be appointed and limited discovery allowed on the issue of exhaustion.

_Jeremy Pinson_
Jeremy Pinson

## Certificate of Service

I certify service via U.S. Mail upon AUSA Erica McCallum on 3-6-21 by delivery - postage prepaid - to staff for Mailing to her.

_Jeremy Pinson_
Jeremy Pinson

1a