

United States District Court

District of Arizona

FILED ___ LODGED
RECEIVED ___ COPY

MAR 1 8 2022

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

Jeremy Pinson,
          Plaintiff,

v.

United States of America,
          Defendant

CV 19-00422-TUC-RM

Plaintiff's Counter Statement
of Facts In Opposition to Motion For
Summary Judgment

Plaintiff, pursuant to LRCiv. 56.1, sets forth the following disputed and undisputed material facts in opposition to defendant Motion For Summary Judgment (Doc. 77, 76). Plaintiff responds first to each of Defendants Statement of Facts ("DSOF") identically as enumerated by defendant consistent with Rule 56.1 (b), LRCivP, and Fed.R.Civ.P. 56(c).

DSOF 1: Admitted. Undisputed.

DSOF 2: Admitted. Undisputed.

DSOF 3: Disputed. Inmates "must be provided with the means to notify staff of a fire or similar emergency." (Doc. 77, Ex. B, Page 133). BOP regulations define the word "must" to mean an obligation is imposed. See 28 CFR 500.1

DSOF 4: Disputed. Plaintiff's testimony is that officers often watched movies which prevented them

-1-

from audibly supervising inmates. (See Pinson Decl., Ex. 1 at 2); Inmates told investigators it took a tier of inmates kicking their doors to summon staff. (Doc. 77, Ex. B at Page 43).

DSOF 5: Disputed. BOP Policy requires staff to respond to all emergencies, and staff may be disciplined or terminated for Endangering the Safety of An Inmate (Plaintiff's Exhibit 2, Standards Of Employee Conduct Standard Schedule of Disciplinary Offenses and Penalties). USP Tucson implemented "Duress buttons" for "emergency and/or life threatening situations" (Doc. 77, Ex. B, Att. 8 at 11) and once they were adopted for use in reporting emergencies staff had no discretion in responding to them. (See also, Doc. 77, Ex. B at 43).

DSOF 6: Disputed, See DSOF 5 above, plaintiff's response.

DSOF 7: Disputed. Plaintiff testified staff were told About the missing duress button the moment She moved into the cell (Doc. 77, Ex. A at 26, 25, 24, 27), staff visually observed the

Missing button (Doc. 77, Ex. A at Page 27) and reported it to a Lieutenant (id. at 28) an assistant Warden (id.) and other staff members (id.). (Note: Plaintiff cites to the ECF Page Count not the pages as enumerated on the Exhibit itself).

DSOF 8: Undisputed.

DSOF 9: Undisputed.

DSOF 10: Undisputed.

DSOF 11: Undisputed. (Note: DSOF 11 appears twice as the PSOF is incorrectly numbered beginning at DSOF 11 on Page 3 of Doc. 77).

DSOF 12: Disputed. Plaintiff testified that she had, repeatedly. (Doc. 77, Ex. A at Pages 24-28).

DSOF 13: Disputed. Plaintiff testified it was reported, observed by staff, and nothing was done. (Doc. 77, Ex. A at Pages 24-28).

DSOF 14: Disputed. Plaintiff testified it was reported, observed by staff, and nothing was done. (Doc. 77, Ex. A at Pages 24-28).

DSOF 15: Undisputed.

DSOF 16: Undisputed.

DSOF 17: Disputed. Plaintiff testified there was no
button or cover plate. (Doc. 77, Ex. A at 25)

DSOF 18: Undisputed.

DSOF 19: Undisputed.

DSOF 20: Undisputed.

DSOF 21: Disputed. Plaintiff was the victim of a
brutal assault and attempted rape. There
was no fight despite staff falsely reporting
there was. (See Plaintiff's Exhibit  , DHO
Report stating plaintiff violated BOP Code
201 "Fighting Another Person" and Ex. 1,
Pinson Decl. at 3). Plaintiff's injuries
were visibly serious (Plaintiff's Exhibit 3,
Photographs taken July 12, 2019 post-attack
of Pinson). Witnesses described to SIS
investigators plaintiff screamed for help.
(Doc. 77, Ex. B at 43), and inmates kicked
their doors to summon staff (id.).

DSOF 22: Disputed. Plaintiff reported she'd been the
victim of a sexual assault within 24 hours
of the assault. (Doc. 77, Ex. A at 34, Lines
5-12).

DSOF 23: Disputed. Plaintiff reported the sexual assault attempt as early as July 13, 2019 less than 24 hours from the assault/attempted rape. (Doc. 77, Ex. A at 34, Lines 5-12). Undisputed insofar as plaintiff _also_ provided a note to her psychologist on July 15, 2019.

DSOF 24: Disputed. Plaintiff testified she made a number of attempts to be separated from Makhimetas, after he began making threats. (Doc. 77, Ex. A, Pages 19, Lines 20-25, Page 21 at Lines 13-25, Page 22 at Lines 1-13, Page 12 at Lines 10-25, Pages 15-16).

DSOF 25: Undisputed.

DSOF 26: Undisputed.

DSOF 27: Undisputed.

DSOF 28: Disputed. Plaintiff's testimony reflects she was emotional, she cried and told her doctor full details well beyond what appears in the DSOF 28 quote. (See Doc. 77, Ex. A, Pages 34-37).

DSOF 29: Undisputed.

DSOF 30: Disputed. See Response to DSOF 24 above.

—5—

DSOF 31: Disputed. Defendants own exhibits reflect staff duties following an inmate report of a threat by one inmate to rape another (See Doc. 77, Ex. B, Att. 9 at 106, 107). BOP Regulations require "When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate." 28 CFR 115.62.

DSOF 32: Disputed insofar as it suggests 28 CFR 541.27 overrules 28 CFR 115.62 or relieve staff of their duties under 115.62.

DSOF 33: Undisputed.

DSOF 34: Disputed insofar as it suggests invalidation of 28 CFR 115.62 (or Doc. 77, Ex. B, Att. 9 at 106, 107).

DSOF 35: Disputed. See Doc. 77, Ex. B, Att. 9 at Pages 106, 107. (Also, Plaintiff's Exhibit 4, USP Tucson Institution Supplement).

~6~

DSOF 36: Disputed. 28 CFR 115.62 contains no such language. The policy itself says "In cases where the alleged perpetrator is another inmate, the Operations Lieutenant is notified immediately and immediately safeguards the inmate." (Doc. 77, Ex. B, Att. 9 at Page 107). The BOP defines sexual abuse as including "any attempt, threat, or request by an inmate to engage in" sexual assault as defined by 28 CFR 115.6 (see Doc. 77, Ex. B, Att. 9, Page 80). Upon a report of such separation of victim and the abuser was required (Doc. 77, Ex. B, Att. 9, Page 108).

DSOF 37: Disputed. BOP Program Statement more narrowly defines "sexual abuse" to include both a "threat" and "attempt" (Doc. 77, Ex. B, Att. 9, Page 80) to make contact.

DSOF 38: Disputed. Plaintiff testified the opposite. (Doc. 77, Ex. A, Pages 12, 15-16, 19, 20-22).

40: Disputed. Plaintiff testified that he did.
  (Doc. 77, Ex. A, Pages 14-16) (also Page 20, at 1-6)

PSOF 41: Undisputed, insofar as counsel never asked plaintiff about the notes.

DSOF 42: Undisputed, insofar as the Complaint (as amended) did not describe her verbal reports in any detail.

DSOF 43: Undisputed.

DSOF 44: Disputed. Plaintiff's testimony described far more than just being "Knocked to the ground". (Doc. 77, Ex. A, Pages 22-26).

DSOF 45: Undisputed.

Submitted 3-4-2022

Jeremy Pinson

Certificate of Service

This document is served by U.S. Mail in the same envelope as the Response to Doc. 76.

Jeremy Pinson



Exhibit 1

Declaration of Jeremy Pinson

I declare the following is true under penalty of perjury:

1. I was housed in the USP Tucson SHU multiple times between 2019 and 2020, including on July 12, 2019.

2. I provide this declaration to attest to the fact that on evening shift between 4 pm and 12 AM USP Tucson SHU staff frequently brought movies to work with them and would watch them at full volume on large flat screen televisions installed in the SHU Control Center by hooking them up to play movies instead of the SHU surveillance cameras live images.

3. A true copy of the false incident report charging me July 12, 2019 is attached hereto.

Executed under 28 U.S.C. 1746. 3/4/22.

Jeremy Pinson

BP-A0288 **INCIDENT REPORT**
Dept. of Justice / Federal Bureau of Prisons        Date created: 07-13-2019

**Part I - Incident Report**

| 1. Institution: **TUCSON USP** | | Incident Report Number: **3278487** | |
|---|---|---|---|
| 2. Inmate's Name **PINSON, JEREMY** | 3. Register Number **16267-064** | 4. Date of Incident **07-12-2019** | 5. Time **21:20** |
| 6. Place of Incident **Special Housing Unit Cell 140** | 7. Assignment **P SHU UNAS** | 8. Unit **UNIT A** | |
| 9. Incident **201 -- FIGHTING WITH ANOTHER PERSON.** | | 10. Prohibited Act Code(s) **201** | |

11. Description Of Incident
(Date: **07-12-2019**    Time: **21:20** staff became aware of incident)

**On 7/12/19, at approximately 2120, while conducting rounds in Bravo Range we noticed that both inmates in cell 140 had injuries consistent with a fight. Inmate** (b)(6); (b)(7)(C) **and inmate Pinson, Jeremy #16267-064 are both assigned to cell 140 on Bravo Range. Both inmates are assigned to cell 140 on Bravo Range. Both inmates complied with verbal directives to submit to hand restraints. Inmate** (b)(6); (b)(7)(C) **and inmate Pinson, Jeremy #16267-064 were escorted out of their cell and separated immediately for safety and security reasons. Medical was notified and a medical assessment was conducted on both inmates. No further incident.**



COPY
7-12-19    (b)(6); (b)(7)(C)

| 12. Typed Name/Signature of Reporting Employee (b)(6); (b)(7)(C) | 13. Date And Time **07-12-2019 22:22** | |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature) | 15. Date Report Delivered | 16. Time Report Delivered **00:00** |

Prescribed by P5270                    Replaces BP-S288.052

Attachment to Pinson Decl.

Exhibit 2

PS 3420.09
2/5/99
Attachment 1, Page 0

<u>Standard Schedule of Disciplinary Offenses and Penalties</u>

1.   This table is intended to be used as a guide in determining appropriate discipline to impose according to the type of offense committed.   The offenses listed are not inclusive of all offenses.

2.   Ordinarily, penalties imposed should be within the range of penalties provided for an offense.   In aggravated cases, a penalty outside the range of penalties may be imposed.   For example, supervisors, because of their responsibility to demonstrate exemplary behavior, may be subject to greater penalty than is provided in the range of penalties.   When a more severe penalty than provided for in the range of penalties is proposed, the notice of proposed action must provide a justification.

3.   The deciding official will consider relevant circumstances, including mitigating and aggravating factors, when determining the appropriate penalty.   The range of penalties provided for most offenses is intentionally broad, ranging from official reprimand to removal.   While the principles of progressive discipline will normally be applied, it is understood that there are offenses so egregious as to warrant severe sanctions for the first offense up to and including removal.   This is especially   true in cases where there is no indication that the employee would be corrected by a lesser penalty, or if the offense is of such a nature that reoccurrence of the conduct could jeopardize security or bring disrepute on the Bureau of Prisons.   For example, if an employee failed to respond to an emergency, even if that emergency turned out to be a false alarm, removal would be appropriate if the deciding official was not convinced that the employee would respond promptly to any future emergency.

4.   Where appropriate, consideration may be given to a demotion or other action in lieu of removal.

5.   Suspension penalties on this schedule refer to calendar days.  Except for emergency suspensions and indefinite suspensions, all disciplinary suspensions are to begin on the first workday of the employee's next regularly scheduled work week.

6.   The reckoning period is defined as that period of time following the date management becomes aware of the offense during which that offense can be used to determine the sanction for a subsequent offense.

USA 000071

USA 000072

PS 3420.09
2/5/99
Attachment 1, Page 1

7.   Offenses falling within the reckoning period, even though unrelated, should be considered when determining the appropriate action.

8.   Where the deciding official substitutes a letter of reprimand in lieu of a greater proposed sanction, the letter of reprimand itself is to be separate from the decision letter and is not to refer to the greater sanction proposed.

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 1. Unexcused or unauthorized absence of 8 hours or less. | Unauthorized absence of 8 hours or less, tardiness, leaving the job without permission. | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 6 months. |
| 2. Unexcused or unauthorized absence of between 1 and 5 consecutive workdays. | Unauthorized absence of 8 to 40 hours. | 1-day to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 1 year. |
| 3. Excessive unauthorized absence. | Unauthorized absence of more than 5 consecutive workdays. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 4. Careless workmanship or negligence resulting in spoilage or waste of materials or delay in work production. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 5. Failure or delay in carrying out orders, work assignments, or instructions of superiors. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 6. Loafing, wasting time, sleeping on the job, or inattention to duty. | Potential danger to safety of persons and/or | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

USA 000073

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| | actual damage to property is considered in determining severity of the penalty, as is potential or actual adverse impact on government operation. | | | | |
| 7. Insubordination. | Disobedience to constituted authorities, or refusal to carry out a proper order from any supervisor or other official having responsibility for the work of the employee. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 8. Disorderly conduct, fighting, threatening, or attempting to inflict bodily injury to another, engaging in dangerous horseplay. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 9. Disrespectful conduct, use of | Includes verbal abuse of | Official reprimand to | 14-day suspension to | Removal. | 2 years. |

USA 000074

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| insulting, abusive or obscene language to or about others. | | removal. | removal. | | |
| 10. Reporting for duty or being under the influence of intoxicants or other drugs; unauthorized possession of intoxicants or drugs on government or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | 30-day suspension to removal. | 2 years. |
| 11. Failure to follow orders during an emergency situation. | Potential danger to safety and/or damage to property is a primary consideration in determining severity of the penalty. | 5-day suspension to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 12. Failure to respond immediately to an emergency situation. | Potential danger to safety of persons and/or damage to property is a primary consideration in determining severity of the | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

USA 000075

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| | penalty. | | | | |
| 13. Failure to observe safety precautions. | To include: (1) precautions for personal safety; (2) posted rules; (3) signs; (4) written or oral safety instructions, or failure to use protective clothing and equipment. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 14. Endangering the safety of or causing injury to staff, inmates or others through carelessness or failure to follow instructions. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 15. Giving an inmate an order which could be hazardous to health and safety. | Potential danger to safety of persons and/or actual damage to property is a primary consideration in determining severity of the | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

USA 000076

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 16. Unauthorized possession or use of, loss of, or damage to government property or property of others. | penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 17. Willful use or authorization of use of a U.S. government owned or leased motor vehicle or aircraft for other than an official purpose. | 31 U.S.C. Section 1349 provides for a minimum 30-day suspension. | 30-day suspension to removal. | 45-day suspension to removal. | Removal. | 2 years. |
| 18. Theft or attempted theft or misappropriation of government property or the property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 19. Conversion of government funds or funds in government custody to personal use. | Includes, but is not limited to, travel advances, imprest funds, amounts received as collections and inmate funds. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 20. Malicious damage to government property or the property of others. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

USA 000077

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 21. Gambling or unlawful betting on government-owned or leased premises. | | Official reprimand to 10-day suspension. | 10-day . suspension to removal. | 14-day suspension to removal. | 2 years. |
| 22. Promotion of gambling on government-owned or leased premises. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 23. Physical abuse of an inmate. | In determining the severity of the penalty, the circumstances of the incident (were the employee's actions totally unwarranted) should be given more consideration than the presence or absence of physical injury. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 24. Loss of temper in the | Potential of | Official | 5-day | 14-day | 2 years. |

USA 000078

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| presence of inmates, former inmates, their families or friends. | creating a disturbance is a primary consideration in determining severity of penalty. | reprimand to removal. | suspension to removal. | suspension to removal. | |
| 25. Receiving or soliciting gifts, favors, or bribes in connection with official duties. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 26. Acceptance of any gift or favor from an inmate or former inmate. | Value of gift or favor and the reasons for accepting are primary considerations in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 27. Giving or offering an unauthorized article or favor to any inmate, their families or friends. | Value of article or favor and the reasons for giving are primary considerations in determining the severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |

USA 000079

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 28. Preferential treatment of inmates. | Potential or actual negative reaction of other inmates is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 29. Improper relationship with inmates, former inmates, their families or friends. | Degree of involvement is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 30. Aiding or abetting inmate violation or attempted violation of any law, rule, regulation or commission of any prohibited act. | Degree of aid and seriousness of violation is a primary consideration in determining severity of penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 31. Failure to report to management any violation or attempted violation of unprofessional contacts with inmates, former inmates, their families | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

USA 000080

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| or friends. | | | | | |
| 32. Falsification, misstatement, exaggeration, or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding. | Includes, but is not limited to, the destruction of records to conceal facts, and a concealed conflict of interest in the performance of official duties. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 33. Refusal or failure to cooperate in any official U.S. government inquiry or investigation, including a refusal to answer work-related questions or attempting to influence others involved in the inquiry. | Includes administrative or criminal investigation, grievance inquiry, EEO investigation, and any other administrative inquiry. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 34. Refusal to undergo a search of person or property. | | Removal. | Removal. | Removal. | 2 years. |
| 35. Criminal, dishonest, infamous, or notoriously disgraceful conduct. | Includes conduct on or off duty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 36. Conduct which could lead others to question | Includes, but is not limited | Official reprimand to | 14-day suspension to | Removal. | 2 years. |

USA 000081

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| an employee's impartiality. | to, a financial, sexual, or emotional relationship with a subordinate in a supervisor's chain of command. | removal. | removal. | | |
| 37. Discrimination in official action against an employee or applicant because of race, religion, sex, national origin, age, handicapping condition, sexual orientation or any reprisal action taken against an employee for filing a discrimination complaint. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 38. Use of Department of Justice identification for other than authorized purposes. | Example: Use to coerce, intimidate, or deceive (Includes ID cards, badges, and other Bureau credentials.) | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 39. Intentional | | Official | 14-day | Removal. | 2 years. |

USA 000082

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| violations of rules governing searches and seizures. | | reprimand to removal. | suspension to removal. | | |
| 40. Reckless disregard of rules governing searches and seizures. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 1 year. |
| 41. Negligent violations of rules governing searches and seizures. | | Official reprimand to 1-day suspension. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 1 year. |
| 42. Unauthorized dissemination of official information. | | Official reprimand to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 2 years. |
| 43. Use of official information for private purposes. | Potential personal gain is a primary consideration in determining severity of the penalty. | Official reprimand. | 14-day suspension to removal. | Removal. | 2 years. |
| 44. Unauthorized removal of records or documents. | Consequences of loss, or breach of security is a primary consideration in determining severity of the penalty. | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

USA 000083

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 45. Release of information which could breach the security of the institution. | Consequences or potential consequences is a primary consideration in determining severity of the penalty. | 3-day suspension to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 46. Improper denial of official information to an authorized official. | | Official reprimand to 5-day suspension. | 5-day suspension to 14-day suspension. | 14-day suspension to removal. | 2 years. |
| 47. Breach of facility security. | | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 48. Failure to report any breach or possible breach of facility security. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to. removal. | 2 years. |
| 49. Trafficking contraband. | Nature of article and degree of involvement are primary considerations in determining severity of the penalty. | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years. |
| 50. Engaging in outside employment without approval. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |

USA 000084

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| 51. Failure to honor just debts without good cause. | A just financial obligation is one acknowledged by the employee, reduced to judgment by a court or arranged by settlement. | Official reprimand. | Official reprimand to 5-day suspension. | Official reprimand to removal. | 2 years. |
| 52. Failure to report arrest. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| 53. Misconduct off the job. | | Official reprimand to removal. | 5-day suspension to removal. | 14-day suspension to removal. | 2 years. |
| * 54. Failure to report a violation of the Standards of Conduct, or retaliation or discrimination against those who make such a report. | Offense includes failure to report violation of Program Statement, government ethics regulations, EEO laws and criminal laws. In particular, supervisors or | Official reprimand to removal. | 14-day suspension to removal. | Removal. | 2 years.* |

USA 000085

| NATURE OF OFFENSE | EXPLANATION | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE | RECKONING PERIOD |
|---|---|---|---|---|---|
| | managers must report sexual harassment observed by or reported to them. No retaliation can be taken against staff or inmates who report any such violations. | | | | |

USA 000086

Exhibit 3



*Attachment #3*

# UNITED STATES PENITENTIARY
## TUCSON, ARIZONA
### EVIDENCE PHOTOGRAPHY



| Type of Incident | Unwitnessed Fight |
|---|---|
| Date and Time of Incident | 7/12/19 9:20 P.M. |
| Inmate Name / Reg. No. | Pinson, Jermey 16267-064 |
| Location of Incident | Special Housing Unit Cell 140 |
| Photograph(s) by | Senior Officer ▮ Celix ▮▮▮ |
| Description of Photo | Face of inmate Pinson |

**Additional comments**: Unwitnessed fight in Special housing unit cell 140

USA 000327



Attachment #3

# UNITED STATES PENITENTIARY
## TUCSON, ARIZONA
### EVIDENCE PHOTOGRAPHY



| Type of Incident | Unwitnessed Fight |
|---|---|
| Date and Time of Incident | 7/12/19 9:20 P.M. |
| Inmate Name / Reg. No. | Pinson, Jermey 16267-064 |
| Location of Incident | Special Housing Unit Cell 140 |
| Photograph(s) by | Senior Officer ▮ Celix |
| Description of Photo | Face of inmate Pinson |

Additional comments: Unwitnessed fight in Special housing unit cell 140

USA 000328

Exhibit 4

## Certification

The Attached FCC Tucson Supplement: **5324.12 — Sexually Abusive Behavior Prevention and Intervention Program** was certified as current on **3/3/2017**.



U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Complex
Tucson, Arizona

# Complex Supplement

OPI:    PSY
NUMBER:  TCX 5324.12
DATE:   December 11, 2015
SUBJECT: Sexually Abusive Behavior Prevention and Intervention Program

1. <u>PURPOSE AND SCOPE</u>.  To reflect how the Federal Correctional Complex in Tucson, Arizona, will comply with Program Statement 5324.12, Sexually Abusive Behavior Prevention and Intervention Program, dated June 4, 2015; defining and specifying guidelines preventing sexually abusive behaviors against inmates by other inmates or staff.  This includes referral and administrative criteria for the Prison Rape Elimination Act (PREA) program at FCC Tucson.  FCC Tucson will ensure compliance with a zero-tolerance approach to the preventing, detecting, and responding to sexual abuse and sexual harassment.  This zero-tolerance approach includes, but is not limited to, the prohibition of non-medical staff viewing inmates of the opposite gender engaged in private activities (e.g., showering, using the bathroom, etc.); prohibition of staff from searching or physically examining a transgender or intersex inmate for the sole purpose of determining the inmate's genital status; establishes procedures for inmates to report sexual abuse or sexual harassment privately; provides inmates access to an outside victim advocate; and provides protection from retaliation for all inmates and staff members who report sexual abuse, sexual harassment, or cooperation with investigations.

2. <u>DIRECTIVES RESCINDED</u>

   IS 5324.09B, Sexually Abusive Behavior Prevention and Intervention Program (12/16/2013)

3. <u>DIRECTIVES REFERENCED</u>

PS3420.11   Standards of Employee Conduct (12/6/13)
PS5290.15   Intake Screening (3/30/09)
PS5324.12   Sexual Abusive Prevention and Intervention
Program (6/4/15)
P5500.14   Correctional Services Procedures Manual
(10/19/12)
P5510.13   Posted Picture File (8/22/11)
P5500.14   Crime Scene Management and Evidence Control
(8/22/11)
P6031.03   Patient Care (8/23/12)

4.   <u>STANDARDS REFERENCED</u>

   a.   American Correctional Association (ACA) 4th Edition
   Standards for Adult Correctional Institutions:  4-4056, 4-
   4133, 4-4277, 4-4365, 4-4371, 4-4406M.

   b.   ACA 4th Edition Standards for Adult Local Detention
   Facilities:  4-ALDF-2A-29, 4-ALDF-40-22-5, A-ALDF-4D-22-6M,
   4-ALDF-4D-22-7, 4-ALDF-4D-22-8, 4-ALDF-7B-10.

   c.   ACA 2nd Edition Standards for the Administration of
   Correctional Agencies:  2-CO-1C-18.

5.   <u>PROGRAM OBJECTIVES</u>

   a.   Specification of Staff Member(s) responsible for:

      (1) Staff training activities ensuring a coordinated
      response to a report of sexually abusive behavior, and

      (2) Inmate education regarding prevention of sexually
      abusive behavior and sexual harassment.

   b.   Notification procedures when sexually abusive behavior
   occurs (including notification of appropriate law
   enforcement agencies).

   c.   <u>Responding to the Inmate Victim</u>

      (1)  Providing security to any inmate who alleges he
      is the victim of sexually abusive behavior or sexual
      harassment and, where appropriate, to inmates who are
      reported by others to be the victims of sexually
      abusive behavior or sexual harassment;

19-401 RFP Response 1250

(2)  Identify entities (e.g., institution Health
Services or community medical services) responsible
for providing medical assessment (e.g., forensic
examination) and treatment of the victim of a sexual
assault.

d.   Monitoring the Inmate Perpetrator

(1)  Monitoring or management of the perpetrator
designed to minimize the risk of future predation, and

(2)  Description of the system in place, ensuring the
Chief of Correctional Services is notified of inmates
with a serious sexual predation history or who are "at
risk" of engaging in sexually abusive behavior while
in Bureau of Prisons' (BOP) custody.

6.   RESPONSIBILITIES

a.   Institution Prison Rape Elimination Act (PREA)
Compliance Manager.  The Warden has designated the
Associate Warden (AW) over Psychology and Health Services
as the Institution PREA Compliance Manager (Compliance
Manager).  He/she will be responsible for ensuring all
elements of this program are met through the coordination
of departments in the prevention, detection, intervention,
investigation, and discipline/prosecution of sexually
abusive behaviors.  In the absence of the designated AW,
the AW over Correctional Services will serve as the
alternate.

b.   Staff Training.  To ensure a coordinated response to a
report of sexually abusive behavior, the Human Resource
Manager will ensure the discussion of the Sexually Abusive
Behavior Prevention and Intervention Program is conducted
during both Institutional Correctional Techniques and
Annual Training.  Psychology Services will provide Annual
Training and Institutional Correctional Techniques training
according to schedules provided by HRM.

The Reentry Affairs Coordinator, along with the sponsoring
department head, will ensure all volunteers are trained on
their responsibilities under the agency's sexual abuse and
sexual harassment prevention, detection, and response

TCX 5324.12
December 11, 2015
Page 4

according to the Standards of Employee Conduct.  Psychology
Services will provide the actual training to the
volunteers.  The "Acknowledgement of Understanding" and
training forms will be documented and maintained in the
volunteer files.  The Human Resource Department will ensure
all contractors are trained on their responsibilities under
the agency's sexual abuse and sexual harassment prevention,
detection, and response.  The "Acknowledgement of
Understanding" and training forms will be documented and
maintained in the contractor files.

Specialized training, is discipline-specific and will be
available at the institution level to staff who is most
likely involved in the management and treatment of sexually
abused victims and perpetrators of the abuse (e.g., Health
Services staff, Psychologists, and Investigation staff).
The Health Services Administrator, Chief of Correctional
Services, and Chief Psychologist will be responsible for
ensuring staff members receive appropriate training and
certifications regarding the treatment, assessment, and
referral of suspected victims.

c.   <u>Inmate Education</u>.  The Bureau of Prisons' Admission and
Orientation (A&O) pamphlet on the Sexually Abusive Behavior
Prevention and Intervention Program is provided to each
inmate at the end of the Admission and Orientation
Handbook,  during intake screenings in the Receiving and
Discharge area, especially for those inmates being placed
in the Special (Restricted) Housing Unit (SHU) upon
arrival.  This information is available in English and
Spanish.  During the A&O Program, the Chief Psychologist or
designee will present details of the Sexually Abusive
Behavior Prevention and Intervention Program to inmate
participants.  In addition, where inmates do not
participate in a formal A&O program (SHU inmates); the
Warden designates a staff member ensuring these inmates
receive information, ordinarily via recorded video
presentation, on the Bureau's Sexually Abusive Behavior
Prevention and Intervention Program, within 30 days of
intake.   Video presentations will also be available in
English and Spanish.  The A&O Coordinator will ensure
copies of the bureau's informational pamphlet on the
Sexually Abusive Behavior Prevention and Intervention

Program is part of the A&O Handbook.  The BOP's zero-tolerance for sexual abuse and sexual harassment information will be continuously posted on the psychology bulletin boards in the housing units to include SHU, the electronic bulletin board, and readily available to inmates in Psychology Services.

Since FCC Tucson's pretrial inmates do not attend A&O, they will be provided with the A&O Inmate Handbook containing the Bureau's Sexually Abusive Behavior Prevention and Intervention pamphlet and will be provided the video presentation on their right to be free of sexual abuse, sexual assault, and harassment.  This video will be presented to all newly admitted inmates in Yucca and Cholla units.

7.   SCREENING PROCEDURES.  All inmates are screened during an intake screening and upon transfer from another facility for their risk of being sexually abused by or sexually abusive toward other inmates.  Unit Managers, Case Managers, and Correctional Counselors (screening staff) are required to use the Bureau's Program Statement Intake Screening, which outlines issues and steps to take during the intake screening process generally, including issues concerning sexual abuse and sexual assault.  The Unit Team uses the Intake Screening Form during the intake process. Screening staff will utilize the PREA Intake Objective Screening Instrument, Attachment A of P.S. 5324.12, to complete the Intake Screening Form upon the inmates' arrival in (R&D), along with the PP-64.  After applying the criteria on the PREA Intake Objective Screening Instrument, the screening staff will complete the Intake Screening form and must note any specific information in the comment section applicable to victimization or abusiveness.  If none of the PREA Intake Screening Objective Instrument criteria applies, staff members make an entry stating, "No apparent PREA criteria met," in the comment section applicable to victimization or abusiveness.  If there is information leading screening staff to determine the inmate is "at risk for victimization," then the screening staff should consider a referral to Psychology Services by scanning a copy of the PP-64 to the TCN/Psychology Services mailbox with a scanned copy of the Intake Screening form.

If the inmate responds "yes" to any of the questions 1, 6a, or 6b, a referral to Psychology is warranted in all cases. If an inmate meets two or more criteria, (Inmate is under 21 or over 65; Inmate has small physical stature; developmental mental/medical disabilities, if apparent, or identified as SCRN4-MH, SCRN3-MH, CARE4-MH, CARE3-MH, SCRN 4, SCRN 3, CARE 3, or CARE 4), leading staff to determine the inmate is "at risk for victimization," then the screening staff should consider a referral to Psychology Services by following the procedure outlined above. This will serve as the referral to Psychology Services for a reassessment of the inmate's level of risk within 30 days of the inmate's arrival.  The Chief of Correctional Services will be notified by the screening staff via e-mail when an inmate is found to be "at risk" for abusiveness. The Chief of Correctional Services will be notified by the screening staff via e-mail when an inmate is found to be "at risk" for abusiveness.  The Chief of Correctional Services will ensure a current SENTRY STG assignment is updated.  The Intake Screening form is maintained in section 3 of the Inmate Central File.  Inmates with a history of sexual predation in an institutional setting should also be referred to Psychology Services. Additionally, Health Services and Special Investigative Services (SIS) staff will inquire if there is any history of sexual victimization, and/or of abusiveness, and will document the results on the appropriate form(s).

8.   <u>NOTIFICATION PROCEDURES</u>.  All staff members are responsible for detecting and monitoring the potential for sexually abusive behaviors to include sexual harassment and must intervene appropriately when they detect such potential. This intervention includes immediate and direct notification to the Operations Lieutenant.  All staff will assume any report of sexual victimization, regardless of whether the source of the report (e.g., "third party") is credible.  They will report details concerning any behaviors detected that are, or could lead to, sexually abusive behaviors.

In Bureau of Prisons cases of reported or suspected sexually abusive behavior, the following must occur:

a.   The Operations Lieutenant will be notified immediately
and he/she will:

(1) Report all allegations of inmate-on-inmate and
inmate-on-staff sexual abuse in TRUINTEL via Report of
Incident form (BP-A0583).  Reports must indicate
whether the allegation involved abusive sexual contact
or a non-consensual sexual act.

(2) Safeguard the inmate victim by ensuring immediate
staff escort the inmate to Health Services for
assessment and treatment of any first-aid need.
Depending on the severity of the alleged sexually
abusive behavior, safeguards could range from
monitoring the situation, changing housing or work
assignments, to separating the alleged perpetrator and
victim.

(3) Notify the Chief Psychologist or, if after
business hours, the on-call Psychologist, who will
ensure assessment of vulnerability and mental health
treatment needs.

(4) Handle all inmate allegations of sexual abuse by a
staff member or an inmate in a confidential manner
throughout the investigation.  However, for
allegations of sexually abusive behavior in which a
staff member is the alleged perpetrator, only the
SIA/SIS Lieutenant and Warden are notified of the
specifics of the allegations; they make the
appropriate referral to the Office of Internal
Affairs.

(5) During business hours, when there is any
allegation of sexually abusive behavior in which an
inmate is the alleged perpetrator, ensure the SIA,
Chief of Correctional Services, Institution PREA
Coordinator, and the Warden are notified.

(6) During non-business hours, when there is any
allegation of sexually abusive behavior in which an
inmate is the alleged perpetrator, ensure the SIA,
Chief of Correctional Services, Institution PREA

Coordinator, Duty Officer, and on-call Psychologist are  notified.

(7) At the conclusion of the investigation, SIS staff will document the alleged victim was informed an allegation was substantiated, unsubstantiated or unfounded and the notification will be attached to the SIS file.

9.    RESPONDING TO THE INMATE VICTIM.  The Institution PREA Coordinator reviews the initial allegation, investigative packet, medical assessment(s), psychological assessment, and any other relevant factors to determine whether to activate the full response protocol.  Not all allegations of sexually abusive behavior require full activation of the response protocol, but this does not negate the requirement for the allegations to be reported and documented.

a.  All appropriate staff will consult and determine the actions to be taken to prevent further sexual abusive behavior both to the alleged victim (e.g., change in work assignment, change in housing assignment, closer supervision, protective custody, transfer, or as a last result, removal from the compound) and by the alleged perpetrator (e.g., remove from compound, change in housing assignment).

The Warden ensures all options are considered by completing a Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation form (BP-A1002).  The completed form is stamped "FOI EXEMPT" and placed in the privacy Section of the Inmate Central File ensuring sensitive information is not exploited to the inmate's detriment by staff or other inmates.  The Warden or designee will ensure an electronic copy of the BP-A1002 form is e-mailed to BOP-CPD/PREA COORDINATOR and filed with the investigative case.

The Chief of Correctional Services ensures an STG of "VSA UNV" is entered into SENTRY for the alleged victim, and an assignment of "P SA UNV" for the alleged perpetrator, if known.

b.  Psychology Services is responsible for crisis intervention, assessment of treatment needs, documentation

of the evaluation results, treatment, psychiatric referral, and other treatment options related to the alleged victim. These services will be conducted at no cost to the inmate.

Psychology Services, under the direction of the Institution PREA Compliance Manager, will also ensure inmates and staff who have reported sexual abuse allegations are monitored for 90 days ensuring they are free from retaliation.

Inmate perpetrators (or alleged perpetrators) of sexually abusive behaviors are referred by the Lieutenant to Psychology Services.

c.  Health Services staff are responsible for examination, documentation, and treatment of inmate injuries arising from sexually abusive behaviors, including testing when appropriate for HIV and other sexually transmitted diseases (STDs).  Whenever an inmate is referred to Health Services for examination and treatment of injuries related to sexually abusive behavior, staff must encourage the victim to complete an Inmate Injury Assessment and Follow-Up Medical form (BP-A0362), as required by the Program Statement Patient Care.  Where indicated, medical staff trained in the collection of sexual assault evidence (i.e., "rape kit") shall conduct an examination for physical evidence that may be used later in the formal investigation.  This examine will be provided free of cost to the inmate by the Southern Arizona Center Against Sexual Assault (SACASA)  The inmate victim is offered the opportunity to have a qualified staff member accompany him for support during the medical evaluation in Health Services or a community facility.  If the decision is made to escort an alleged victim of sexual assault to the local hospital, SACASA conducts a forensic medical examination and provides a victim advocate to assist the inmate. SACASA advocacy services are available to the inmate population through the Rape Hotline, which would be provided to the alleged victims at the time of the medical examination.

(1) Transfer to the Local Hospital.  When determined appropriate, inmates who have been or there is a strong suspicion a recent serious assault may have

been sexual in nature, a physical examination of the alleged victim is conducted via transporting the alleged victim and possibly the suspected perpetrator(s) to the Tucson Medical Center for sexual assault evidence gathering, evaluation, and treatment. The victim will be offered the assistance of a qualified institution staff member who will accompany and support the victim through the forensic medical examination process and investigatory interviews and shall provide emotional support, crisis intervention, information, and referrals.  The forensic examination should occur as soon as practical, but within 72 hours of BOP staff becoming aware of an inmate's involvement in a sexually abusive assault.  FCC Tucson has established a relationship with a local victim advocacy group for inmate support services – see the approved Non-Gratuitous Service Agreement with the SACASA (Attachment 1). · These services are offered at no cost to the inmate.

10.   <u>EVIDENCE COLLECTION</u>.  Crime scene preservation and collection of evidence will be conducted in accordance with the Correctional Services Procedures Manual and Sexually Abusive Behavior Prevention and Intervention Program, section 115.64.

11.   <u>MONITORING THE INMATE PERPETRATOR</u>.  During the intake screening process conducted by Unit Management, staff will identify inmates with a history of sexual perpetration (e.g., from self-report or from review of available documents), and must refer the inmate to Psychology Services via a scanned copy of the PP-64 to TCN/Psychology Services~.  Psychology Services will ensure the assessment of continued risk and relevant treatment and/or management needs.

If not previously documented in SENTRY, the referring staff will notify the Chief of Correctional Services of an inmate's report of perpetration, ensuring appropriate steps (e.g., investigation, documentation, CIMS assignments, etc.) are taken.  The Chief of Correctional Services will ensure documentation includes a current SENTRY STG assignment pertaining to the perpetrator.

TCX 5324.12
December 11, 2015
Page 11

When an inmate has been identified as a perpetrator, or as
"at risk" for abusive perpetration, Unit Management will
review classification options in consultation with the
Chief Psychologist, Chief of Correctional Services, and
Health Services Administrator.  Such options to minimize
the risk of future predation may include psychological
treatment through local programs, transfer to a special
treatment program, transfer to a greater or lesser security
facility, application of a Public Safety Factor, or changes
to housing unit or cell assignment, work, education, and
other program assignments.  The Chief of Correctional
Services may also consider limiting access to specific
areas of the institution, use of a two-hour watch program,
addition to the Posted Picture file, etc.

12.  <u>UNANNOUNCED ROUNDS</u>.  Unannounced rounds will be conducted
weekly by supervisory staff and Institution Duty Officers
(IDO).  Unannounced rounds will be conducted throughout the
institution during all shifts.  IDOs will complete the
required documentation and forward the documentation to the
Institution PREA Compliance Manager for retention.


| //s// | //s// |
|---|---|
| J.T. Shartle | Susan G. McClintock |
| Complex Warden | Warden |