GARY M. RESTAINO
United States Attorney
District of Arizona
MICHAEL A. AMBRI
Assistant U.S. Attorney
Arizona State Bar No. 021653
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
michael.ambri@usdoj.gov
*Attorneys for Defendant USA*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson,<br><br>          Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>          Defendant. | CV-19-00422-TUC-RM<br><br>**REPLY SUPPORTING MOTION TO DISMISS AND ALTERNATIVE MOTION FOR SUMMARY JUDGMENT** |

Defendant United States of America submits this reply supporting its Motion to Dismiss and Alternative Motion for Summary Judgment (Doc. 76). Plaintiff's Response (Doc. 80) applies the wrong legal standards, fails to establish a mandate removing the government officials' discretion with respect to the conduct Plaintiff complains of, and fails to show – and indeed does not contest – that the discretion afforded government officials with respect to the matters in issue is susceptible to policy considerations. As set forth in the Motion (Doc. 76) and below, the Federal Tort Claims Act's discretionary function exception, 28 U.S.C. § 2680(a), is a jurisdictional bar to Plaintiff's claims. Defendant requests that this action be dismissed under Rule 12(b)(1). In the event the action is not dismissed, Defendant alternatively requests partial summary judgment in its favor for lack of evidence of causation on Plaintiff's claim related to a broken distress button.[1]

**I.     DISCRETIONARY FUNCTION EXCEPTION BARS THE CLAIM.**

---

[1] Except for causation related to the distress-button claim, discussed below, Defendant withdraws its alternative motion for summary judgment.

### A. Plaintiff Applies The Wrong Standards.

Contrary to the Response, the Court is not restricted to the pleadings or to a summary judgment standard in considering the Motion. "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction." *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988) (citations omitted) (applying discretionary function exception on Rule 12(b)(1) motion). "Faced with a factual attack on subject matter jurisdiction (as here), the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56." *Thornhill Publishing Co. v. General Telephone Corp.,* 594 F.2d 730, 733 (9th Cir. 1979). "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Instead, the Court may consider materials outside the pleadings and resolve factual disputes concerning its jurisdiction without converting the motion to one for summary judgment. *Id.; McCarthy,* 850 F.2d at 560.

Also contrary to the Response, a Rule 12(b)(1) motion need not be brought before the close of pleadings. "The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006); *see also Johnson v. Hurwicz,* No. 5:21-CV-02027-EJD, 2022 WL 444404, at *3 (N.D. Cal. Feb. 14, 2022) (finding the plaintiff's contrary argument to be frivolous); Fed. R. Civ. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action.") (emphasis added); *Makay v. Pfeil,* 827 F.2d 540, 543 (9th Cir. 1987) ("Where subject-matter jurisdiction is lacking, dismissal, not summary judgment, is the appropriate disposition.").

Plaintiff misapplies *Estate of Smith v. Shartle,* No. CV-18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. March 10, 2020), arguing that "dismissal at this stage would be improper." In *Smith,* the Court allowed the claim to proceed into discovery where there was evidence of a policy the government actors were alleged to have violated and that, if

established after discovery, might eliminate the government actors' discretion. 2020 WL 1158552, at *6. Here, discovery is completed and, as will be discussed, Plaintiff does not and cannot point to any statute, regulation or policy eliminating the policy-based discretion afforded BOP officials with respect to the matters Plaintiff alleges.

### B. Plaintiff Fails To Meet Her Burden.

To avoid dismissal, once the government shows that "the challenged actions involve an element of judgment or choice" and that such discretion "involves considerations of social, economic, or political policy," the plaintiff bears the burden of establishing that (1) there is a statute, regulation or agency policy prescribing specific action or (2) the action was not "susceptible to policy analysis." *United States. v. Gaubert,* 499 U.S. 315, 323-325 (1991). Plaintiff's arguments, addressed below, fail to establish a mandate requiring the actions she alleges should have occurred, or that the discretion afforded government officials with respect to those matters is not susceptible to policy considerations.

### 1. PREA Prescribes No Specific Action.

Plaintiff refers to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309. However, Plaintiff points to no provision in PREA or its implementing regulations that mandates any specific course of action applicable to this case, and there is none.

PREA simply (a) established a mechanism for annual statistical review, analysis and reporting of the incidence and effects of prison rape (34 U.S.C. § 30303); (b) established a national clearinghouse for information and assistance in preventing, investigating and punishing incidents of prison rape, and for annual reports to Congress summarizing the activities of the Department of Justice regarding abatement (34 U.S.C. § 30304); (c) established a mechanism for monetary grants to states (34 U.S.C. § 30305); (d) established a National Prison Rape Elimination Commission to study the effects of prison rape and, within five years after the commission's initial meeting, prepare and publish to the Attorney General and others a report recommending national standards for the reduction of prison rape (34 U.S.C. § 30306); (e) directed the Attorney General to, after receiving the commission's report, publish a final rule adopting national standards for the detection,

prevention, reduction and punishment of prison rape (34 U.S.C. § 30307); and (f) as a condition of federal grants to organizations responsible for accrediting penal facilities, required that such organizations implement accreditation standards consistent with the Attorney General's final rule (34 U.S.C. § 30308). A review of PREA and the implementing regulations established by the Attorney General (28 C.F.R. §§ 115.05-115.501) – particularly 28 C.F.R. §§ 115.11-115.93 applicable to adult prisons including USP Tucson where Plaintiff's claims arise – confirms that there is no provision directing protective custody, transfer, or any other measure or action in response to an inmate safety threat or mandating any particular action with respect to emergency devices. *See, e.g., Gladney v. United States,* 858 F. App'x 221, 223 (9th Cir. 2021), cert. denied, 142 S. Ct. 909 (2022) (rejecting plaintiff's argument that PREA precluded application of the discretionary function exception because "[n]either the Prison Rape Elimination Act ("PREA") nor any implementing regulation imposes a mandatory duty on the Federal Bureau of Prisons ("BOP") to monitor prisoners continuously. … To the contrary, both sources of law explicitly grant the BOP discretion in how to reduce the sexual assault of people in its charge"); *L.C. v. United States,* No. 5:21-CV-00124-GFVT, 2022 WL 1179400, at *7 (E.D. Ky. Apr. 19, 2022) (rejecting the argument that Plaintiff makes here because "PREA and pertinent regulations provide discretion to the BOP regarding actions the BOP should take" and "[c]ourts around the country have found that the BOP's decisions in the PREA context are grounded in policy considerations and therefore barred by the discretionary function exception") (collecting cases); *Peralta v. United States,* No. CV1908912CJCMRWX, 2020 WL 13210654, at *3 (C.D. Cal. Oct. 23, 2020) (finding PREA's regulations concerning reporting "do not affect the discretion afforded to the BOP when determining how to protect inmates and supervise employees … [n]or do they contain a level of detail which would specifically prescribe a course of action for an employee to follow" such that "BOP's actions in how they protected Plaintiff … are discretionary").

The policies adopted by BOP in conformance with PREA's implementing regulations reinforce the regulatory structure and the discretion and policy considerations

in BOP's determinations concerning an safety. Program Statement 5324.12 (Sexually Abusive Behavior Prevention and Intervention Program), dated June 4, 2015, available at https://www.bop.gov/policy/progstat/5324_012.pdf, sets forth BOP's procedures in carrying out PREA's implementing regulations. PS 5324.12, pp. 1-2. The policy mirrors the PREA regulations for adult prisons and the discretion afforded officials in making the day-to-day decisions in carrying out PREA's purposes, with sections keyed to Subsection A of the PREA regulations applicable to adult prisons. Program Statement 5324.12 incorporates the general guidelines set forth in 28 C.F.R. § 115.13 (Supervision and Monitoring), 28 C.F.R. 115.41 (Screening for Risk of Victimization or Abusiveness), 28 C.F.R. 115.42 (Use of Screening Information), none of which contains any mandatory and specific action concerning separating inmates or the use of duress buttons or other security devices. *See* P.S. 5324.12, § 115.13 (Supervision and Monitoring), at pp. 14-16; § 115.41 (Screening for Risk of Victimization or Abusiveness), at pp. 29-32; § 115.42 (Use of Screening Information), at pp. 29-33. Consistent with PREA, nowhere does the program statement require separation of inmates or any action with respect to duress buttons. The Complex Supplement submitted by Plaintiff (Doc. 80 at pp. 33-44) similarly tracks the general guidance affording substantial discretion set forth in PREA and Program Statement 5324.12, and similarly contains no mandate to separate inmates in the circumstance Plaintiff describes or to employ or take any action with respect to duress buttons.

### 2. "Local Choice" Does Not Remove Discretion.

Plaintiff refers to an alleged "local choice to equip all USP Tucson SHU cells with duress buttons." First, Plaintiff points to no mandate governing duress buttons. As discussed in the Motion and here, what measures to employ concerning inmate safety in this circumstance are discretionary and policy-based, and there is no mandate concerning duress buttons. Second, an alleged "local choice" is not a "statute, regulation or policy" that removes discretion. *Gaubert,* 499 U.S. at 322 (discretion element defeated only when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow") (emphasis added); *see also Evans v. United States,* 876 F.3d 375, 382–

83 (1st Cir. 2017) (a "well-intentioned effort to employ best practices will not suffice to convert a discretionary act into a non-discretionary act") (citing *Gaubert,* 499 U.S. at 334 ("If the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the [discretionary function] exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable")); *Irving v. United States,* 162 F.3d 154, 169 (1st Cir. 1998) ("uncodified practices … cannot create the kind of specific obligation that gives rise to liability"); *Garza v. United States,* 161 F. App'x 341, 345 (5th Cir. 2005) (custom of employees is not relevant to discretionary function exception).

### 3. The Actor's State Of Mind Is Irrelevant.

Plaintiff does not contest that BOP officials' decisions concerning inmate safety are laden with policy considerations. Her argument is that dismissal is precluded due to an alleged lack of evidence showing the government actor actually weighed policy considerations. Plaintiff misconstrues the policy element. The focus is "not on the agent's subjective intent in exercising the discretion conferred by statute or regulation," but rather "on the nature of the actions taken and on whether they are *susceptible to policy analysis." Gonzalez v. United States,* 814 F.3d 1022, 1027-28 (9th Cir. 2016) (citing *Gaubert,* 499 U.S. at 325). "The decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Id.* at 1028. Thus, "the [defendant's] failure to present evidence that its actions were actually based on policy considerations is not relevant to whether the discretionary function exception applies." *Doe v. Holy See,* 557 F.3d 1066, 1085 (9th Cir. 2009).

As Plaintiff concedes, where, as here, "governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324. As Plaintiff also concedes, the discretion afforded BOP officials concerning inmate safety is grounded in substantial policy considerations. *See Alfrey v. United States,* 276 F.3d 557, 565 (9th Cir. 2002) (confirming

policy considerations); *see also* Motion (Doc. 76) (collecting cases). Plaintiff's argument that the official must actually have weighed policy considerations in exercising the discretion afforded to him or her contradicts controlling authority.

### 4. **Plaintiff' "Negligent Guard" Theory Also Fails.**

Plaintiff argues for an exception to the discretionary function exception, based on alleged negligence of the government actor. There is no such exception. The discretionary function exception shields the government from liability "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Doe v. Holy See,* 557 F.3d 1066, 1084 (9th Cir. 2009). As described in the Motion and here, the two-prong analysis is whether there is discretion and whether the discretion is susceptible to policy considerations. There is no third prong analyzing whether there was negligence and, indeed, the discretionary function exception preserves sovereign immunity despite the possibility of negligence.

In *Alfrey,* 276 F.3d 557 (9th Cir. 2002), for example, the Ninth Circuit applied the discretionary function exception where the inmate had reported his cellmate's threat and the officer then failed ever to check the SENTRY database for the cellmate's potential for violence and failed to conduct an adequate search for the weapon the cellmate ultimately used to kill the inmate. *Id.* at 559-60. Looking to the regulations giving prison officials discretion in how to respond to threats by inmates and that the "types of decisions" involved in the action or inaction "implicate social and public-policy considerations," the Court affirmed dismissal without regard to the negligence of the officers. *Id.* at 565. The Court spoke to the argument Plaintiff raises here in addressing the officers' failures: "[N]either the result of those choices nor the possible negligence of those choices means that the choices themselves involved no policy judgment." *Id.* at 567; *see also Autery v. United States,* 992 F.2d 1523, 1528 (11th Cir. 1993) (warning against "collaps[ing] the question whether the [government actor] was negligent into the discretionary function inquiry").

The decisions Plaintiff cites do not support her position. They either did not involve the discretionary function exception or they actually applied the two-prong test and allowed the case to proceed due to an applicable mandatory policy. *See, e.g., McDaniels v. Smith,*

No. 2:18-cv-00238-JPH-MJD) (S.D. Indiana Sept. 30, 2021), attached as Exhibit A to the Response (did not involve the discretionary function exception); *Padilla v. United States,* No. LACV 09-05651, 2012 WL 12882367 (C.D. Cal. Oct. 9, 2012) (denying application of the discretionary function exception not due to negligence but because, unlike here, there was evidence that the government official violated a mandatory policy in failing to separate inmates); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 472, 473, 475 (2d Cir. 2006) (finding a policy in play mandating that an inmate not be left unattended in locked areas, and that the injuries would have been prevented had the officer adhered to the policy). Here, after discovery, Plaintiff points to no applicable policy mandating a specific action.

## II.     SUMMARY JUDGMENT RE: DISTRESS-BUTTON CLAIM.

For the reasons described in the Motion and above, this action should be dismissed in its entirety for lack of subject matter jurisdiction. In the event the action is not dismissed, Defendant requests summary judgment in its favor on Plaintiff's claim concerning a broken duress button. *See* Fed. R. Civ. P. 56(a) (party may move for summary judgment on a claim or part of a claim); *United States v. Sterling Centrecorp Inc.,* 208 F. Supp. 3d 1126, 1132 (E.D. Cal. 2016) (affirmed 977 F.3d 750 (9th Cir. 2020)). Plaintiff does not present evidence to establish that a broken distress button caused her alleged losses.

To prevail on a negligence claim, the plaintiff has the burden of establishing not only duty and breach but also that the breach caused the alleged harm. *Gipson v. Kasey,* 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007). The causation element requires a showing both that the harm to the plaintiff was a foreseeable result of the alleged negligent conduct and also that the negligent act was a "substantial factor" in producing the injury such that the injury would not have occurred "but for" the negligent act. *Ontiveros v. Borak,* 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983). To avoid summary judgment, the plaintiff must provide evidence from which a reasonable jury could find that the act more likely than not caused the injury. *Kreisman v. Thomas,* 12 Ariz. App. 215, 217, 469 P.2d 107, 109 (1970).

Plaintiff's claim is that she was put in a cell with a broken distress button. In other words, her causation theory is that if the distress button had been working she would not

have suffered the assault or the injuries incurred in the assault. However, she presents no evidence that a distress button would have changed anything. The undisputed evidence is that (a) the attack was sudden,[2] (b) the attack was initiated with a fist-blow from behind,[3] (c) Plaintiff was knocked to the floor where she remained,[4] and (c) other inmates called for help and Plaintiff believes at least one may even have activated a distress button.[5] Plaintiff provides no evidence that, if her distress button had been working, the attack would not have occurred, she would have been able to activate the button, or that, had she activated the button, she would not have suffered the injuries that she alleges.

Except for causation as to the distress-button claim, the summary judgment portion of Defendant's motion (Doc. 76) is withdrawn.

### III.    CONCLUSION.

For the foregoing reasons, Defendant requests that this action be dismissed for lack of subject-matter jurisdiction and, alternatively, that summary judgment be entered in Defendant's favor on Plaintiff's claim as it relates to a broken distress button.

RESPECTFULLY SUBMITTED this 26th day of September, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

/s/Michael A. Ambri
MICHAEL A. AMBRI
Assistant U.S. Attorney
*Attorneys for Respondent*

---

[2] *See* Plaintiff's Deposition, Doc. 77, at 20:23 to 21:3.

[3] *See id.,* at 21:1-3.

[4] *See id.* at 21:9-19; 22:2-3.

[5] *See id.* at 21:20 to 22:1; 27:6-15.

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, and, on September 27, 2022, a copy was sent via first class U.S. mail to:

Jeremy Pinson
Register Number 16267-064
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson AZ  85734
*Plaintiff Pro Se*

*/s/ P. Vavra*