✓ FILED ___ LODGED
___ RECEIVED ___ COPY
JAN - 5 2023
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

United States District Court
District of Arizona

Jeremy Pinson,
Plaintiff,
v.
United States Of America,
Defendants

Case No. 19-CV-00422-RM

Motion For Issuance of Subpoena's, Notice of Additional Witnesses, Supplement to Counsel Motion

Comes now the pro se plaintiff and seeks Orders relating to the upcoming trial in this Matter.

I. Background

In July 2019 federal convicted sexual predator Ricki Markhimetas attempted to rape plaintiff while savagely beating her in a cell with no duress alarm to cry for help. (See Doc. 22). The claim has been litigated through summary judgment proceedings. (See Doc. 117). A settlement conference is pending (id.) but a date has not been set (id.). At a separate such conference on Nov. 3, Pinson v. USA, No. 19-cv-00401-RM, in this Court BOP attorneys were not at all

interested in a settlement plaintiff sought upon what she believes were very generous terms but which Judge Bowman related to plaintiff the BOP was unwilling to even seriously consider. (Ex. 2, Pinson Decl.). As plaintiff's settlement position has not changed, settlement of this action is - she believes at least - a futile goal with such an uncompromising agency. (id.). Thus, this matter is pending a trial.

During this litigation spanning nearly 3 years the plaintiff has maintained that her fear of being raped by Makhimetas was not taken seriously by the BOP, under its own PREA policies. (e.g. Doc. No. 22, 117). As it turns out, plaintiff is not anywhere near the only victim of this approach to the issue of rape in federal prisons. (See Ex. 1, USA Today Column from Dec. 20, 2022 edition). The BOP apparently has a "Rape Club" (id. at 1). A United States Senate report released last Tuesday" found that sexual abuse in "19 of 29" BOP prisons and the guards involved "were never prosecuted." (id.). "On Oct. 12, Inspector General Michael Horowitz wrote a memo to the newly appointed director of the Bureau of Prisons Colette Peters, complaining about the bureau's policy of not relying on inmate statements 'to make administrative misconduct findings and take disciplinary action against BOP employees, unless these

evidence aside from inmate testimony that independently establishes the misconduct" (id.) BOP's policy claims "zero tolerance" but the Inspector General accuses BOP of "It's violating the law," in PREA cases like the one this case is about to go to trial on. (Id.; and Doc. 117).

## II. Discussion

The United States has never denied that Ricki Makhimetas tried to rape plaintiff and broke bones in her face and hospitalized her in the process (Doc. 117). Instead, it maintains its staff did nothing wrong. (id). Indeed, it appears they never do. (Ex. 1, hereto). Now a trial on the issue looms. (Doc. 117).

On Sept. 14, 2022 plaintiff was the victim of a second attack by a man both she and her attorney Andrew Talai pled for the BOP pursuant to 28 CFR 115.62 required she be protected from under PREA. (Ex. 2, Pinson Decl.) After the attack she was placed into the SHU with, inter alia, other victims of that individual - Jose Armendariz and Ernesto Zaragosa-Solis - and kept there ever since. (id.). On Oct. 5, 2022 the USP Tucson PREA

Lieutenant Christensen admitted "Staff fucked up" in an interview of Pinson and others. (See Doc. 122 at Inmate Declarations) and chose to threaten long term housing in SHU and a transfer to an even more violent prison if they did not agree to drop any legal claims against USP Tucson staff (Id.). When plaintiff told Christensen she, Armendariz and Zaragosa Solis would not bow to his demand and pointed out Judge Marquez' ruling about his duties - Doc. 117 - Christensen made good on his threat and then to make matters worse he ~~who~~ wrote a report that resulted in an unconstitutional act of further retaliation (See Doc. 126, Ex. A, Att. 6). When the plaintiff sought an injunction (Doc. 122) BOP then scrambled to expunge the charges (Doc. 126, Ex. A, Att. 6) but stands on keeping her in SHU and pushing an unwanted transfer against plaintiff, Armendariz and Zaragosa - Solis (Doc. 122, Inmate Declarations).

A. Subpoenas for Witnesses

The plaintiff wants to subpoena relevant witnesses about how PREA was broken long before plaintiff was a repeat victim of those failures. Particularly:

BOP Director Colette Peters
DOJ Inspector General Michael Horowitz
Chandra Bozelko

Horowitz is DOJ's Inspector General, and his office accuses BOP of failing victims of sexual abuse, which is what this case is about at its very core.
Peters is BOP's Director now and is the one Horowitz wants to conduct a proper inquiry into those failures and to fix them and is likely to review what BOP records show internally about its unresponsiveness and improper responses under 28 C.F.R. 115.62 (and 115.67) and will possess knowledge, like Horowitz, relevant to the core issues in this case.
Finally, plaintiff's contact with Chandra Bozelko indicates she too possesses substantial information on the topic as well which she has published in the national media.

Fed. R. Civ. P. 45(a) requires issuance of a subpoena to any party requesting one. Local Court rules require a party to submit a subpoena for the Court to endorse it. The plaintiff is in SHU, there are no subpoena forms accessible to her to present to the Court to review and endorse. Therefore, the Court should Order the Clerk to send her

3 such forms, within 10 days from receipt thereof to resubmit them in supplement to this motion to meet the Local Rules, for her to compel and secure the testimony of Horowitz, Bozelko and Peters.

B. Subpoena Deuces Tecum

The Office of Inspector General, BOP, and U.S. Senate Committee as referenced in Ex. 1 are not parties to this suit and were never subject to discovery. The Oct. 12 memo from Horowitz to Director Peters, and the Senate Report, clearly and publicly reveal the BOP's staff:

1. Do not take PREA complaints seriously;
2. Do not hold staff accountable for their conduct relating to sexual abuse, ever; and,
3. Have a 'rape club' being run across the BOP.

The documentation of investigators leading to these conclusions is relevant as plaintiff has shown:

1. Her July 2019 (and Sept. 22 for that matter) PREA complaints were not taken seriously;
2. No one was held accountable for her victimization;
3. Her attempted rape was one of many in the Bureau of Prisons.

This evidence from the Oct. 12 OIG Memo is critical to show the pattern and practice of failing to protect victims of sexual abuse, deliberately not holding staff accountable, Systemic problems of sexual abuse, and all are relevant to staff failing to protect Pinson from her would-be rapist. See, e.g. Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)("deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents"); Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987); Hall v. Artuz, 954 F.Supp. 90, 95 (S.D.N.Y. 1997)(holding letter from Legal Aid Society could put prison superintendent and regional health services administrator on sufficient notice) Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999) ("A prison officials knowledge of prison conditions ... require the officer to exercise his authority and take the needed action to investigate, and if necessary, to rectify the offending condition."); Valdes v. Crosby, 450 F.3d 1231, 1244 (11th Cir. 2006)(evidence that Warden was placed on notice of a history of widespread abuse presented a jury question as to his liability);

It is public knowledge that BOP has a serious sexual abuse problem. Indeed when Makhimetas tried to rape her he was not prosecuted, admitted to PREA investigators he attacked plaintiff, and what did the BOP do? Released him to general population and then tormented the victim in SHU for months. Three years, several assaults, and several lawsuits later, what did BOP do in response to another PREA the plaintiff filed? Released the predator from SHU to victimize her AGAIN, put the victim in the SHU for months, and did nothing to prosecute her repeat abuser: Tyrone Brown, when it knew as early as July that Brown was accused of sex-trafficking trans women by force and coercion at USP Tucson. The documents plaintiff seeks from BOP, OIG and the Senate reinforces this point. As such, 3 such document subpoena forms should be given to her to fill out and return for the Court's review of this motion for approval and service by the U.S. Marshal under Rule 45 and 28 U.S.C. 1915(d).

C. Additional Witnesses:

Plaintiff has a continuing duty even after the close of discovery to disclose witnesses to AUSA Ambri. In addition to Horowitz, Bozelko and Peters

She now seeks to add them to her witness list for the trial. See, e.g. Fed. R. Civ. P. 26 et seq.

Plaintiff has also identifed 40 additional USP Tucson inmates who were victims of sexual abuse or harrassment, and in whose cases will testify staff were dismissive of their complaints and in many cases were threatened with the SHU and a lengthy transfer if they pushed to hold their abusers accountable, as will be outlined in a coming motion filed hereafter. These victims should be subject to questioning at trial by counsel to ensure their trauma is not worsened by reliving their experiences with a lack of sensitive and professional direct examination. A task best-suited to an appointed attorney. See, e.g. Cf. Wood v. Idaho Dept. of Corrections, 391 F. Supp. 2d 852, 867 (D. Idaho 2005). While the public identities of the victims of the "rape club" have been discussed in a prior motion (in Beauburn et al. v. United States, M.D. Fla. Case No. 19-cv-00615-TJC-PRL) these 40 witnesses more recently identified in interviews at USP Tucson may not wish for their identities to

be identified on a public docket, nor subject to the retaliation of USP Tucson Staff, therefore the plaintiff asks the Court appoint counsel to help identify them under seal and ex parte for their own protection from further abuse and retaliation.

## Conclusion

Wherefore plaintiff seeks an Order as follows:

1. Issue 6 subpoena forms to plaintiff with leave to supplement this motion with them within 14-days to comply with Local Rules on issuance of subpoenas;
2. Authorize service of said subpoenas on the witnesses and custodians of documents as described herein.
3. Appoint counsel to plaintiff.
4. Allow plaintiff to file under seal, ex parte, the identities of 40 inmates of USP Tucson who filed PREA complaints and faced threats, harassment, or abuse as a result from USP Tucson Staff, for testimony at trial.

[signature]

Jeremy Pinson

Certificate of Service

I certify service upon AUSA M. Ambri via U.S. Mail on 12-26-22 by delivering, postage prepaid, to prison staff for mailing.

[signature]

Jeremy Pinson