**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson,<br><br>           Plaintiff,<br><br>v.<br><br>United States,<br><br>           Defendant. | No. CV-19-00422-TUC-RM<br><br>**ORDER** |

Pending before the Court are Plaintiff Jeremy Pinson's Renewed Motion for Appointment of Counsel and Order Regarding Access to Courts (Doc. 188), to which Defendant United States responded (Doc. 191); Plaintiff's Motion to Increase Damage Award Available (Doc. 189), to which Defendant requested an extension of its response deadline (Doc. 192); Plaintiff's Motion for Reconsideration of Order Denying Appointment of Counsel (Doc. 190); and Plaintiff's Motion for Order Regarding Late Discovery (Doc. 193), to which Defendant responded (Doc. 201).[1]

**I.    Background**

In the remaining claim in this case, Plaintiff seeks monetary damages under the Federal Tort Claims Act ("FTCA"), alleging that United States Penitentiary-Tucson ("USP-Tucson") prison officials failed to address her reports that her cellmate was threatening her. (*See* Docs. 21, 22, 25, 53, 117.) Specifically, Plaintiff alleges that on July 12, 2019, she was placed in the Special Housing Unit in a cell with Ricki

---

[1] Also pending are the parties' Motions in Limine (Docs. 195, 196, 197, 198, 199, 200, 202), which will be resolved separately.

Makhimetas. (Doc. 22 at 5.) She further alleges that she reported to USP-Tucson staff that Makhimetas had threatened her, but staff did not separate her from Makhimetas. (*Id.*) Makhimetas later attacked and tried to rape her, causing injuries that required her to be transported to the emergency department of the Tucson Medical Center. (*Id.*)

A bench trial in the above-captioned matter is scheduled for November 6, 2023, and a pretrial conference is scheduled for September 28, 2023. (Doc. 180.)

## II.     Renewed Motion for Appointment of Counsel and Motion for Reconsideration of Order Denying Appointment of Counsel

The Court has twice appointed counsel to represent Plaintiff in this case. The first attorney was appointed on a limited basis on March 21, 2022 (Doc. 82) and withdrew on September 6, 2022 (Docs. 105, 107). The second attorney was appointed on May 31, 2023 (Doc. 175) and withdrew on July 28, 2023 (Docs. 183, 184). The Court declined to appoint different counsel after the second attorney's withdrawal. (Doc. 187.)

In her Renewed Motion for Appointment of Counsel, Plaintiff complains of problems with her outgoing and incoming legal mail, defense counsel's animosity toward her, delays in this case, and her difficulties preparing for trial in light of restrictions in the Special Housing Unit. (Doc. 188 at 1-5, 8-14.) She also asserts that this Court has not resolved her access-to-courts issue "or the question of whether it will issue a writ of habeas corpus for plaintiff to physically appear at trial." (*Id.* at 4.) Plaintiff argues that this Court has already determined that exceptional circumstances warrant the appointment of counsel in this case, and she further argues that she should not be penalized for her previously appointed counsel's decision to withdraw. (*Id.* at 6-8.) Plaintiff also argues that an attorney will be better suited to question or cross-examine sexual misconduct victims, and that Plaintiff will be re-traumatized if she has to cross-examine Makhimetas, who is listed as a defense witness in the parties' Joint Proposed Pretrial Order. (*Id.* at 17-18; *see also* Doc. 162 at 15.)

In her Motion for Reconsideration of Order Denying Appointment of Counsel, Plaintiff argues that the appointment of new counsel is required by this Court's prior

finding of exceptional circumstances, and she complains that she has been prejudiced by the previous appointment and then withdrawal of counsel, as it resulted in her loss of trial preparation time. (Doc. 190 at 1-2.) Plaintiff also reiterates her complaints regarding interference with her ability to prepare for trial, including the seizure by Bureau of Prisons ("BOP") staff of her case file in this matter. (*Id.* at 2-3.)

Defendant takes no position on Plaintiff's request for counsel, and Defendant has no objection to postponing the trial in this matter. (Doc. 191 at 1, 3.) However, Defendant notes that this Court previously denied Plaintiff's access-to-courts claim, and Defendant argues that Plaintiff cannot maintain a new access-to-courts claim because she has not shown actual injury. (*Id.* at 1-2.)

"Generally, a person has no right to counsel in civil actions," but "a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). In determining whether "exceptional circumstances" exist, courts "must consider the likelihood of success on the merits as well as the ability of the petitioner to articulate [her] claims *pro se* in light of the complexity of the legal issues involved." *Id.* (internal quotation marks omitted). These considerations "must be viewed together," and neither is dispositive. *Id.*

The Court previously appointed counsel in light of the upcoming trial in this matter and the sensitive nature of some of the expected testimony and evidence in the case. (Doc. 175 at 7.) However, the Court noted that "Plaintiff is an experienced pro se litigant who has demonstrated an ability to research and make legal arguments and to timely litigate issues as they arise in this case." (*Id.*) The Court continues to find that Plaintiff has demonstrated an ability—and, in fact, is uniquely capable—of articulating her claims pro se. The issues in this case are not particularly complex. Furthermore, an appointed attorney would lack the depth of familiarity that Plaintiff has with the facts of this case. The Court declines to reconsider its denial of Plaintiff's request for new counsel.

Plaintiff may raise any issues concerning her ability to prepare for trial, including any issues concerning seizure of her case file, during the pretrial conference scheduled for September 29, 2023. The parties may also address, during the pretrial conference, the likelihood that Makhimetas will testify during the trial in this matter. Given Plaintiff's history with Makhimetas, the Court may consider appointing an attorney on a limited basis to conduct the cross-examination of Makhimetas if he testifies at trial.

Once motions in limine have been resolved and it is clear which witnesses will be testifying at trial, the Court may set a further hearing to (1) determine whether to issue writs of habeas corpus ad testificandum to secure the physical presence at trial of any inmate witnesses (*see* Doc. 152 at 6-7); resolve any issues concerning witness subpoenas, and discuss logistics concerning any remote testimony by inmates or other witnesses.

Because Plaintiff's motions indicate there may be some confusion on the issue, the Court clarifies that it has already granted Plaintiff's request for a writ of habeas corpus ad testificandum to secure her physical presence at the trial in this matter. (*See* Doc. 175 at 6, 8.) The Court will issue the writ shortly before trial to ensure that Plaintiff is properly transported.

### III. Motion to Increase Damage Award Available[2]

On August 12, 2019, Plaintiff filed an SF-95 administrative tort claim in which she sought $299,999.00 for injuries arising from the July 12, 2019 attack, including physical injuries and "severe pain, anxiety, suicidal thoughts, depression, mental and emotional trauma." (Doc. 43-2 at 2; *see also* Doc. 22-1.) In her operative First Amended Complaint in the above-captioned case, Plaintiff seeks damages against the United States in the amount of $299,000.00 for injuries including "anxiety, depression, insomnia, PTSD, mental and emotional trauma." (Doc. 22 at 6.)

In her Motion to Increase Damage Award Available, Plaintiff seeks to increase her available recovery at trial to the amount of $1,000,000.00 on the basis of newly

---

[2] Defendant moved to extend its deadline for responding to Plaintiff's Motion until September 11, 2023. (Doc. 192.) That date has passed, and Defendant did not file a response or move for a lengthier extension. Accordingly, Defendant's Motion to Extend Time (Doc. 192) will be denied as moot.

discovered evidence. (Doc. 189.) Plaintiff recognizes that the FTCA limits the amount of damages sought by an aggrieved party to the amount requested in an administrative claim. (*Id.* at 1.) However, Plaintiff argues that she qualifies for an exception allowing an increased amount based on newly discovered evidence, because on July 3, 2023, she was diagnosed with post-traumatic stress disorder ("PTSD") due to her history of violent trauma in BOP custody, including injuries inflicted by Makhimetas. (*Id.* at 1-3.)

A Federal Tort Claims Act ("FTCA") plaintiff must present an administrative claim to the appropriate federal agency before filing a civil action. 28 U.S.C. § 2675(a). The plaintiff is thereafter barred from seeking damages in the civil action in an amount "in excess of the amount of the claim presented to the federal agency," unless "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The term "'newly discovered evidence' denotes evidence that existed when the administrative claim was filed, but was 'not discoverable' at that time," whereas the term "intervening facts" refers to "information or events arising after the filing of the claim." *Von Bargen v. United States*, No. C 06-04744 MEJ, 2009 WL 1765767, at *2 (N.D. Cal. June 22, 2009). The plaintiff bears the burden of proving she falls under one of these exceptions. *Id.* In determining whether the plaintiff has met this burden, courts analyze "what was reasonably known or discoverable at the time the [administrative] claim was filed." *Id.*

Here, based on the averments in Plaintiff's Motion, Plaintiff was not diagnosed with PTSD until July 3, 2023—after she had filed her August 12, 2019 administrative claim. Plaintiff relies on *Tookes v. United States* to support her argument that her recent PTSD diagnosis allows her to seek damages in excess of the amount requested in her administrative claim. (Doc. 189 at 2 (citing *Tookes v. United States*, 811 F. Supp. 2d 322 (D.D.C. 2011).) In *Tookes*, however, there was "nothing in the record showing that the plaintiff should have known that she could eventually be diagnosed as suffering from" PTSD. 811 F. Supp. 2d at 335.

- 5 -

Here, Plaintiff listed emotional injuries in her administrative claim, and there is no indication her emotional injuries have worsened in an unforeseeable manner since she filed that claim. *Compare Zurba v. United States*, 318 F.3d 736, 741 (7th Cir. 2003) (allowing increased damages where the plaintiff suffered "severe emotional injuries which surfaced in the years following the accident" and were not included in the administrative claim). Plaintiff's July 3, 2023 PTSD diagnosis "merely concerns the precision with which the nature" of her emotional injuries "can be known," but that is insufficient for purposes of § 2675(b). *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002). Furthermore, in her First Amended Complaint, Plaintiff specifically listed "PTSD" as an injury encompassed in her requested damages of $299,000.00. (*See* Doc. 22 at 5.) Based on these circumstances, the Court finds that Plaintiff has not shown that she should be allowed to increase her requested damages to $1,000,000.00.

**IV.    Plaintiff's Motion for Order Regarding Late Discovery**

In this Motion, Plaintiff states that she received a letter from defense counsel on August 21, 2023, asking her to read and sign a deposition transcript for a deposition taken in this case on November 22, 2021. (Doc. 193 at 1.) Plaintiff states that the document inaccurately states Plaintiff's review and signature was requested on November 29, 2021, which makes Plaintiff hesitant to sign it. (*Id.* at 2.) Plaintiff also notes that the transcript forbids its being copied, but BOP staff copied it and gave Plaintiff a copy. (*Id.*) Finally, Plaintiff notes that no self-addressed envelope was provided, nor was Plaintiff provided with the necessary postage to return the transcript. (*Id.* at 2-3.) Plaintiff seeks clarification regarding whether she is required to sign the document, whether she is required to return the transcript to defense counsel, how she can return the original when she was given only a copy, and whether she is required to pay for the costs of returning the transcript. (*Id.* at 3.)

In response, Defendant avers that, during review of the case file in preparation for trial in this matter, defense counsel realized Plaintiff had not reviewed and signed a copy of the deposition transcript and, to ensure Plaintiff had the opportunity to do so, defense

1  counsel sent her a copy of the transcript. (Doc. 201 at 1.) Defendant avers that it will
2  make arrangements with Plaintiff and the BOP to obtain Plaintiff's transcript corrections
3  and send the transcript back to the court reporter. (*Id.* at 3.)
4  Federal Rule of Civil Procedure 30(e)(1) states:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
> (A) to review the transcript or recording; and
> (B) if there are any changes in form or substance, to sign a statement listing the changes and the reasons for making them.

9   Plaintiff is instructed to review the deposition transcript, if she wishes to do so, to
10  determine whether she has any corrections that she would like to make. Plaintiff shall
11  work with defense counsel to return the copy of the deposition transcript, along with any
12  corrections, to the court reporter. The Court will allow Plaintiff an additional fifteen days
13  after this Order issues in which to complete her review and list changes.
14  **IT IS ORDERED** that Plaintiff's Renewed Motion for Appointment of Counsel
15  and Order Regarding Access to Courts (Doc. 188) is **denied**.
16  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Increase Damage Award
17  Available (Doc. 189) is **denied**.
18  **IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration of
19  Order Denying Appointment of Counsel (Doc. 190) is **denied**.
20  **IT IS FURTHER ORDERED** that Defendant's Motion to Extend Time to
21  Respond to Motion to Increase Damages (Doc. 192) is **denied as moot**.
22  . . . .
23  . . . .
24  . . . .
25  . . . .
26  . . . .
27  . . . .
28  . . . .

1 **IT IS FURTHER ORDERED** that Plaintiff's Motion for Order Regarding Late Discovery (Doc. 193) is **granted to the extent this Order provides the relief requested**. Plaintiff shall review the deposition transcript and list any changes within **fifteen (15) days** of the date this Order is filed, and shall work with defense counsel to return the deposition transcript, along with any listed changes, to the court reporter.

Dated this 20th day of September, 2023.

_____
Honorable Rosemary Márquez
United States District Judge