WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson,<br><br>           Plaintiff,<br><br>v.<br><br>United States,<br><br>           Defendant. | No. CV-19-00422-TUC-RM<br><br>**ORDER** |

      Pending before the Court are Defendants' Motion in Limine No. 1: Failure to Timely Disclose Witnesses (Doc. 195); Defendant's Motion in Limine No. 2: Evidence of Other Incidents and/or PREA Noncompliance (Doc. 196); Defendant's Motion in Limine No. 3: Opinion Testimony (Doc. 197); Defendant's Motion in Limine No. 4: Department of Justice Investigator General and Report (Doc. 198); Defendant's Motion in Limine No. 5: Testimony or Evidence Regarding Functionality of Cell Duress Alarm (Doc. 199); Defendant's Motion in Limine No. 6: Special Investigative Supervisors Manual (Doc. 200); and Plaintiff's Motion in Limine (Doc. 202).[1]

**I.    Background**

      In the remaining claim in this case, Plaintiff seeks monetary damages under the Federal Tort Claims Act ("FTCA") against Defendant United States, alleging that United States Penitentiary ("USP")-Tucson prison officials failed to address her reports that her cellmate was threatening to rape her. (*See* Docs. 21, 22, 25, 53, 117.)  Specifically,

---

[1] Plaintiff's Motion for Order Securing Trial Witness Appearances (Doc. 216) will be resolved separately on an expedited basis.

Plaintiff alleges that on July 12, 2019, she was placed in the Special Housing Unit in a cell with Ricki Makhimetas. (Doc. 22 at 5.) She passed notes to Officer Vasquez notifying him that Makhimetas had threatened to rape her, but Officer Vasquez did not separate Plaintiff from Makhimetas. (*Id.*) Later that night, Makhimetas attacked and tried to rape Plaintiff, causing injuries that required her to be transported to the emergency department of the Tucson Medical Center. (*Id.*)

The parties filed their Joint Proposed Pretrial Order on April 24, 2023. (Doc. 162.) A bench trial is scheduled for November 6, 2023. (Doc. 180.)

**II.    Discussion**

In the parties' Joint Proposed Pretrial Order, Plaintiff lists 61 witnesses, including numerous individuals who will testify to BOP officials' non-compliance with the Prison Rape Elimination Act ("PREA") and/or officials' responses to threats reported by inmates on unrelated occasions. (Doc. 162 at 5-12.) Defendant lists 21 witnesses, including Makhimetas. (*Id.* at 12-17.)

In the pending Motions in Limine, Defendant moves to preclude all of Plaintiff's witnesses due to untimely disclosure (Doc. 195), and further argues that this Court should preclude Plaintiff from offering witness testimony concerning unrelated incidents (Doc. 196), expert witness testimony (Doc. 197), testimony from Department of Justice Inspector General Michael Horowitz (Doc. 198), testimony or evidence concerning the functionality of the duress alarm inside Plaintiff's cell (Doc. 199), and evidence or testimony concerning a BOP Special Investigative Services Manual ("SIS Manual") (Doc. 200). Plaintiff moves to preclude Defendant from calling Makhimetas as a witness. (Doc. 202.)

The Court heard oral argument on the pending Motions in Limine at a pretrial conference held on September 28, 2023, and took the Motions under advisement. (Doc. 211.) During the pretrial conference, Plaintiff averred that prison officials had confiscated and destroyed her case file and that, in order to prepare for trial, she needed copies of documents disclosed by Defendant during discovery, as well as copies of

documents she filed in response to Defendant's Motion for Summary Judgment. (*Id.*) Defendant agreed to provide Plaintiff with copies of documents disclosed during discovery. (*Id.*; *see also* Doc. 212.) The Court will direct the Clerk to mail Plaintiff copies of the documents she filed in response to Defendant's Motion for Summary Judgment.

### A. Defendant's Motion in Limine No. 1: Failure to Timely Disclose Witnesses (Doc. 195)

Defendant argues that Plaintiff failed to disclose during discovery the witnesses she lists in the parties' Joint Proposed Pretrial Order and that, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) and (c)(1), she should be precluded from calling the witnesses at trial. (Doc. 195.) Defendant avers that eight of the witnesses listed by Plaintiff in the Joint Proposed Pretrial Order were first identified in motions that Plaintiff filed in December 2022 and January 2023; that Plaintiff intentionally withheld the identities of forty other witnesses; and that eleven witnesses were never mentioned by Plaintiff until she listed them in the Joint Proposed Pretrial Order. (*Id.* at 4-8.) Defendant argues that Plaintiff's failure to disclose her witnesses during discovery was not substantially justified and that allowing Plaintiff to call the witnesses at trial would be prejudicial to Defendant, who was denied an opportunity to depose the witnesses or otherwise conduct discovery concerning their anticipated testimony. (*Id.* at 8-10.)

In response, Plaintiff concedes that witnesses Sonnen, Dial, Lewis, Dobbs, Armendariz, Gooch, and Talai were not disclosed during discovery, but she avers that she disclosed them promptly after learning of their testimony in 2022. (Doc. 209 at 3-5.) With respect to her other witnesses, Plaintiff states that she properly disclosed a witness list in this case, by certified mail sent on June 14, 2021, with tracking number 7020-0640-0001-3944-7870. (*Id.* at 1; *see also* Doc. 145 at 9.) Plaintiff further contends that, after learning Defendant claimed she had not disclosed a witness list, she re-mailed her witness list to defense counsel. (Doc. 151.) Defendant avers that the witness list sent with tracking number 7020-0640-0001-3944-7870 pertained to one of Pinson's other cases,

CV-19-00235-RM, and Defendant presents documentation supporting that averment. (*See* Docs. 147-1, 147-2; *see also* Doc. 195-2 at 3, 6-10, 12.)  Defense counsel further contends that his office never received Plaintiff's re-sent witness list. (Doc. 195-2 at 4.)

Rule 37(c)(1) provides that, if a party fails to "identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Here, the record does not support Plaintiff's contention that she timely disclosed a witness list; the witness list to which Plaintiff refers was labeled as being for CV-19-00235-RM rather than this case. (*See* Docs. 147-1, 147-2; *see also* Doc. 195-2 at 3, 6-10, 12.) However, the literal terms of Rule 37(c)(1) do not apply because Plaintiff has not violated a disclosure obligation of Rule 26(a) or (e). Plaintiff is in the custody of the United States and brought this action pro se, and therefore these proceedings are exempt from the initial disclosure requirements of Federal Rule of Civil Procedure 26(a)(1). *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). The information that the Court requires the parties to disclose in their Joint Proposed Pretrial Order encompasses the information required by Rule 26(a)(3), and Plaintiff disclosed her witnesses in the Joint Proposed Pretrial Order. Because Plaintiff is not in violation of a disclosure obligation of Rule 26(a) or a supplemental disclosure obligation of Rule 26(e), the Court declines to preclude her witnesses under Rule 37(c)(1).

Rule 37(b)(2)(A) provides that, if a party fails to obey an order to provide discovery, the court "may issue further just orders," including prohibiting the party from "introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). The Court's Scheduling Order required the parties to disclose a "complete list of witnesses" prior to the close of discovery, and it warned the parties that they would not be allowed to offer any witnesses not so disclosed "except for good cause." (Doc. 41 at 2, 5.) The record indicates Plaintiff did not timely disclose a witness list, in violation of the requirements of the Scheduling Order. It is not clear why Defendant has not received the witness list that Plaintiff avers she re-sent in March 2023. Of note, Plaintiff has

repeatedly complained of problems sending and receiving legal mail, and attorney Amy Hernandez also voiced concerns regarding that issue. (*See* Doc. 183 at 2.) It is difficult for the Court to discern whether problems with the prison mail system contributed to Plaintiff's failure to timely disclose a witness list in this case. If problems with the prison mail system are to blame, then good cause exists for Plaintiff's failure to comply with the witness-list provision of the Court's Scheduling Order. In light of Plaintiff's pro se status and the difficulties she appears to have experienced with the prison mail system, the Court finds that precluding all of Plaintiff's witnesses is too harsh a penalty under Rule 37(b)(2)(A).

For the above reasons, the Court will deny Defendant's Motion in Limine No. 1.

**B. Defendant's Motion in Limine No. 2: Evidence of Other Incidents and/or PREA Noncompliance (Doc. 196)**

In the Joint Proposed Pretrial Order, Plaintiff lists numerous witnesses who will testify to Officer Vasquez's sexual harassment and non-compliance with PREA, non-compliance with PREA by other Bureau of Prisons ("BOP") staff, and retaliation by BOP staff. (Doc. 162 at 5-12.)

Defendant asks the Court to preclude Plaintiff from eliciting testimony or introducing evidence of BOP officials' PREA noncompliance or alleged retaliation on any occasion other than the occasion that gave rise to this case. (Doc. 196 at 1-2.) Defendant contends that such testimony and evidence is inadmissible under Federal Rules of Civil Procedure 404 and 405, and irrelevant to the central issue of whether Officer Vasquez knew prior to Makhimetas' attack that Makhimetas posed a threat to Plaintiff. (*Id.* at 5-8.) Defendant also argues that the evidence is inadmissible under Rule 403 because it would cause unfair prejudice, confuse the issues, cause undue delay, waste time, and be needlessly cumulative, requiring dozens of collateral mini trials regarding BOP staff responses to inmate reports made on unrelated occasions. (*Id.* at 7.)

In response, Plaintiff argues that a prison official may be held liable for denying humane conditions of confinement through a showing that the risk of harm was so long-

standing, pervasive, or well-documented that the official must have known of it. (Doc. 210 at 1.) She further points to the standard for proving a custom or practice for purposes of *Monell* liability. (*Id.* at 2-3.)[2] Plaintiff also argues that evidence of Officer Vasquez's failure to adhere to PREA is admissible under Federal Rules of Evidence 404(b) and 413, and that the prejudicial effect of evidence must be balanced against its probative value. (*Id.* at 1-2.)

Under Federal Rule of Evidence 404(b), evidence of another "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it may be "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1)-(2). Pursuant to Rule 405, a person's character or character trait may be proven "by relevant specific instances of the person's conduct" only if the person's character or character trait "is an essential element" of a claim or defense. Fed. R. Evid. 405(b). Federal Rule of Evidence 413 allows for the admission of evidence of prior sexual assaults by a defendant in a criminal case in which the defendant is accused of a sexual assault. Fed. R. Evid. 413(a). Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 413 is inapplicable here, as this is not a criminal case involving a defendant accused of sexual assault. Cases setting forth the standard for establishing *Monell* liability on 42 U.S.C. § 1983 claims against municipalities, and cases addressing Eighth Amendment conditions-of-confinement claims, are likewise inapplicable to this FTCA action. Officer Vasquez's character is not an essential element of a claim or defense, and therefore the evidence at issue is not admissible under Rule 405(b). Plaintiff has not established how evidence of PREA non-compliance or retaliation on unrelated occasions

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

by Officer Vasquez or other BOP staff members tends to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). It appears that Plaintiff intends to present evidence that Officer Vasquez and other BOP staff members failed to comply with PREA and/or engaged in retaliation on unrelated occasions in order to prove that Officer Vasquez failed to respond appropriately during the incident at issue in this case. That purpose is improper under Rule 404(b). Furthermore, the evidence at issue raises significant Rule 403 concerns, including unfair prejudice, confusing the issues, and wasting time. Because the evidence is inadmissible under the Federal Rules of Evidence, and any probative value it may have is substantially outweighed by Rule 403 concerns, the Court will grant Defendant's Motion in Limine No. 2.

**C. Defendant's Motion in Limine No. 3: Opinion Testimony (Doc. 197)**

Defendant argues that Plaintiff should be precluded from eliciting any expert testimony because she failed to disclose any such testimony under Federal Rule of Civil Procedure 26(a)(2). (Doc. 197 at 2-3.) Defendant further argues that Plaintiff should be precluded from offering lay testimony concerning mental health or medical diagnoses that Plaintiff claims were caused by the underlying events of this case. (*Id.* at 3-5.) Plaintiff did not file a response to this Motion in Limine.

During the pretrial conference held on September 28, 2023, Plaintiff stated that she does not intend to present expert witness testimony at trial but plans to call her treating psychologist James Hayden. After the pretrial conference, Plaintiff filed an untimely Response arguing that she should be permitted to call Dr. Hayden as a treating psychologist. (Doc. 213.)[3]

As Plaintiff's treating psychologist, Dr. Hayden is exempt from the written report requirement of Federal Rule of Civil Procedure 26(a)(2)(B) to the extent that he will testify to opinions formed during the course of his treatment of Plaintiff. *See Goodman v.*

---

[3] During the September 28, 2023 pretrial conference, Plaintiff averred that she had drafted responses to all of Defendant's Motions in Limine but that she had been unable to purchase stamps to mail all of the responses, and therefore three responses would be filed late.

- 7 -

*Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) ("a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment"); s*ee also* Fed. R. Civ. P. 26(a)(2), Advisory Committee's Notes, 1993 amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.").

Expert witnesses not subject to the written report requirement of Rule 26(a)(2)(B) must be disclosed pursuant to Rule 26(a)(2)(C). Absent stipulation or court order, such disclosure must be made at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D)(i). Here, the Court's Scheduling Order set a deadline for disclosure of expert witnesses and their Rule 26(a)(2)(B) reports. (Doc. 41 at 2.) There is no indication that Plaintiff disclosed Dr. Hayden within the expert disclosure deadline set by the Scheduling Order. However, the Scheduling Order's reference to Rule 26(a)(2)(B) reports could have created ambiguity regarding whether the deadline was applicable only to experts subject to the written report requirement of Rule 26(a)(2)(B).

Plaintiff disclosed Dr. Hayden in the parties' Joint Proposed Pretrial Order, but she stated that he would testify as a fact witness regarding "PREA non-compliance and retaliation at USP Tucson." (Doc. 162 at 10.) The information listed in the Joint Proposed Pretrial order does not adequately disclose Plaintiff's intent to call Dr. Hayden to testify to opinions formed during his treatment of Plaintiff. However, in a prior filing, Plaintiff disclosed her intent to call Dr. Hayden to testify regarding the effect of violence on Plaintiff's mental health. (Doc. 128 at 10.) Given that disclosure, and in light of Plaintiff's pro se status, the Court will allow Plaintiff to call Dr. Hayden to testify to relevant opinions formed during his treatment of Plaintiff. Plaintiff may also call Dr. Samantha Licata, who was disclosed in the Joint Proposed Pretrial Order and Plaintiff's prior filing as a witness who would testify to Plaintiff's mental and emotional injury, as well as Nurse J. Avilez, who was disclosed as a witness who would testify to her medical examination of Plaintiff and Makhimetas. (*See id.*; Doc. 162 at 5, 8.) The Court will

1  otherwise grant Defendant's Motion in Limine No. 3.

**D. Defendant's Motion in Limine No. 4: Department of Justice Investigator General and Report (Doc. 198)**

In the Joint Proposed Pretrial Order, Plaintiff lists as a witness the Inspector General of the United States Department of Justice, Michael Horowitz, who will testify "to his investigation, review, audit, conclusions, and response as to manner of BOP PREA investigations." (Doc. 162 at 8.)

Defendant seeks to preclude Plaintiff from calling the Inspector General as a witness and/or attempting to introduce a report that he authored regarding BOP PREA investigations. (Doc. 198.) Defendant argues that Plaintiff did not disclose the Inspector General as a witness during discovery and did not disclose his report or list it as an exhibit in the parties' Joint Proposed Pretrial Order. (*Id.* at 1-2.) Defendant further argues that the testimony and report are irrelevant and inadmissible under Federal Rule of Civil Procedure 403. (*Id.* at 2-3.) Finally, Defendant argues that the Inspector General is a high-ranking government official lacking first-hand knowledge about the facts at issue in this case and, therefore, under the "apex doctrine," he should not be compelled to testify. (*Id.* at 3-4.)

In response, Plaintiff argues that the Inspector General will provide relevant testimony regarding his investigation of the BOP's chronic failure to address sexual abuse in its prisons, and that the Inspector General's high-ranking status is insufficient on its own to justify excluding his testimony. (Doc. 208.) Plaintiff further argues that the Inspector General's testimony should not be excluded due to a lack of disclosure, because his report was not written until after discovery in this case closed, and the report is publicly available online. (*Id.* at 5.)

The Court has determined in Section II(B), *supra*, that evidence of BOP staff members' PREA non-compliance on unrelated occasions is inadmissible in this case. Plaintiff intends to call Inspector General Horowitz to testify to the BOP's PREA non-compliance. Therefore, the Court's ruling on Defendant's Motion in Limine No. 2

requires also granting Defendant's Motion in Limine No. 4. Furthermore, Inspector General Horowitz lacks first-hand knowledge of the facts at issue in this case, and therefore the apex doctrine provides further reason to preclude his testimony. *See Anderson v. Cnty. of Contra Costa*, No. 15-CV-01673-RS (MEJ), 2017 WL 930315, at *3 (N.D. Cal. Mar. 9, 2017) (apex doctrine generally precludes a party from deposing a high-ranking official who lacks "first-hand, non-repetitive knowledge of the facts at issue in the case"). The Court will grant Defendant's Motion in Limine No. 4.

### E. Defendant's Motion in Limine No. 5: Testimony or Evidence Regarding Functionality of Cell Duress Alarm (Doc. 199)

The Court determined on summary judgment that no statute, regulation, or policy required USP-Tucson to use a duress alarm system, that maintaining cell duress alarms in operable condition was a discretionary function, and that the FTCA's discretionary function exception barred Plaintiff's claim that her cell lacked an operable duress alarm. (Doc. 117 at 15-17.)

In Motion in Limine No. 5, Defendant seeks to preclude Plaintiff from presenting testimony or evidence regarding the functionality of the duress alarm in her cell at the time of Makhimetas' attack. (Doc. 199.) Defendant argues that, because the Court granted summary judgment in its favor on Plaintiff's FTCA claim regarding her placement in a cell without a functioning duress alarm, allegations concerning the alarm are no longer relevant trial issues, and the utility of any such evidence or testimony would be significantly outweighed by unfair prejudice, confusion, and a waste of time under Federal Rule of Civil Procedure 403. (*Id.* at 2.)

In an untimely Response, Plaintiff contends that Defendant obtained a favorable summary judgment ruling by submitting false statements regarding the obligatory nature of the duress alarm in her cell. (Doc. 214.) Plaintiff argues that she should be able to submit evidence at trial to prove that Defendant lied. (*Id.*)

The Court's summary judgment ruling delineates the scope of the issues relevant for trial. Plaintiff cannot present evidence at trial solely for the purpose of challenging

the existing summary judgment ruling. Given the summary judgment ruling, evidence of the non-functionality of the duress alarm in Plaintiff's cell is not relevant on its own to establish a violation of the FTCA. However, it is possible that evidence concerning the functionality of the duress alarm in Plaintiff's cell could be relevant for another purpose—for example, if the non-functioning alarm prolonged Makhimetas' attack or delayed Plaintiff's receipt of medical treatment, thereby affecting Plaintiff's damages. Accordingly, the Court will partially grant and partially deny Defendant's Motion in Limine No. 5.

**F. Defendant's Motion in Limine No. 6: Special Investigative Supervisors Manual (Doc. 200)**

Defendant seeks to preclude Plaintiff from introducing at trial a BOP SIS Manual or any testimony regarding the manual. (Doc. 200.) Defendant avers that Plaintiff requested this document during discovery, but that Defendant objected to the request on the grounds that the manual is a restricted policy that no inmate may possess or review. (*Id.* at 1-2.) The manual was not produced during discovery, and Plaintiff does not possess it. (*Id.*) Defendant argues that the manual is irrelevant to the issues in this case, and that any relevance is significantly outweighed by a potential for undue delay, waste of time, and confusion of the issues. (*Id.* at 3.) Defendant avers that Plaintiff does not oppose this Motion in Limine, except that she intends to cross-examine a defense witness regarding the SIS Manual if Defendant asks the witness questions regarding the FTCA's discretionary function exception, which Defendant does not anticipate doing. (*Id.* at 1, 3.)

At the pretrial conference held on September 28, 2023, Plaintiff confirmed that she does not possess the SIS Manual and does not intend to present it in her case-in-chief; however, she maintains that the SIS Manual should have been disclosed to her during discovery, and she will seek to introduce it if Defendant raises issues concerning the discretionary function exception at trial. In an untimely Response filed after the pretrial conference, Plaintiff argues that the SIS Manual should have been produced during

- 11 -

discovery, and she avers she will raise the issue on appeal. (Doc. 215.)

As Plaintiff does not possess the SIS Manual and there has been no showing of its relevance to the issues remaining for trial,[4] the Court will grant Defendant's Motion in Limine No. 6.

### G. Plaintiff's Motion in Limine (Doc. 202)

Plaintiff asks the Court to exclude Makhimetas as a defense witness. (Doc. 202.) She chastises Defendant for seeking to use her sexual abuser to discredit her at trial, and she expresses concern that Makhimetas will again try to attack her if he testifies in person. (*Id.*) She argues that allowing Makhimetas to have physical access to her would violate her rights under the Crime Victims Rights Act, 18 U.S.C. § 3771. (*Id.* at 1-2.) She further argues that Makhimetas' testimony should be excluded as more prejudicial than probative under Federal Rule of Evidence 403. (*Id.* at 2.)

In response, Defendant argues that Makhimetas' testimony is relevant to the issues of whether Makhimetas threatened to assault Plaintiff and whether Plaintiff advised Officer Vasquez of any such threat. (Doc. 207.) Defendant avers that it expects Makhimetas to testify consistently with prior statements he made to BOP personnel, namely, that his attack on Plaintiff was a spontaneous fight. (*Id.* at 2.) Defendant further avers that Plaintiff's concerns regarding Makhimetas having physical access to her are unwarranted because Makhimetas is housed in a different BOP facility in another state, and Defendant will call him to testify via videoconference technology. (*Id.*) Defendant takes no position on the appointment of counsel for purposes of assisting with the examination of Makhimetas.

Based on Defendant's averment concerning Makhimetas' anticipated testimony, it appears that the testimony is relevant. Plaintiff has not shown that the testimony is inadmissible as unduly prejudicial under Rule 403. As Defendant intends to call Makhimetas to testify remotely, his testimony does not raise concerns regarding

---

[4] Plaintiff previously contended that the SIS Manual was relevant to the FTCA's discretionary function exception. (*See* Doc. 74.) The discretionary function exception is not an issue remaining for trial.

- 12 -

Plaintiff's physical safety. However, to alleviate concerns regarding the psychological and emotional effect of requiring Plaintiff to cross-examine Makhimetas, the Court will attempt to find an attorney willing to be appointed pro bono for the limited purpose of conducting Makhimetas' cross-examination.

**IT IS ORDERED**:

1. Defendants' Motion in Limine No. 1: Failure to Timely Disclose Witnesses (Doc. 195) is **denied**.
2. Defendant's Motion in Limine No. 2: Evidence of Other Incidents and/or PREA Noncompliance (Doc. 196) is **granted**.
3. Defendant's Motion in Limine No. 3: Opinion Testimony (Doc. 197) is **partially granted and partially denied**, as set forth above.
4. Defendant's Motion in Limine No. 4: Department of Justice Investigator General and Report (Doc. 198) is **granted**.
5. Defendant's Motion in Limine No. 5: Testimony or Evidence Regarding Functionality of Cell Duress Alarm (Doc. 199) is **partially granted and partially denied**, as set forth above.
6. Defendant's Motion in Limine No. 6: Special Investigative Supervisors Manual (Doc. 200) is **granted**.
7. Plaintiff's Motion in Limine (Doc. 202) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail Plaintiff a copy of the following docket entries, including all attachments: **Docs. 79, 80, 81, 109, 117**.

Dated this 10th day of October, 2023.

_____
Honorable Rosemary Márquez
United States District Judge