GARY M. RESTAINO
United States Attorney
District of Arizona
MICHAEL L. LINTON
Assistant U.S. Attorney
Arizona State Bar No. 024729
SARAH S. LETZKUS
Assistant U.S. Attorney
Arizona State Bar No. 027314
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
michael.linton@usdoj.gov
sarah.letzkus@usdoj.gov
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Jeremy Pinson, | CV-19-00422-TUC-RM |
|---|---|
| Plaintiff, | **DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| United States of America, | |
| Defendant. | |

Pursuant to this Court's Order (Doc. 211), the United States of America, by and through undersigned counsel, hereby submits its proposed findings of fact and conclusions of law.

**Proposed Findings of Fact and Conclusions of Law**

**I.    Joint Pretrial Order**

1. A pretrial order generally supersedes the pleadings, and the parties are bound by its contents." *Patterson v. Hughes Aircraft,* 11 F.3d 948, 950 (9th Cir. 1993) (holding that since the pretrial order did not leave the question of plaintiff's total disability open for determination at trial, the district court abused its discretion in deciding that issue). The Ninth Circuit consistently has held that issues not preserved in the pretrial order have been eliminated from the action. *Southern California Retail Clerks Union and Food Employers*

*Joint Pension Trust Fund v. Bjorklund,* 728 F.2d 1262, 1264 (9th Cir. 1984); *El Hakem v. BJY Inc.,* 415 F.3d 1068, 1077 (9th Cir. 2005) ("We have repeatedly emphasized that a party may not offer evidence or advance theories at the trial which are not included in the pretrial order or which contradict its terms.")

2. Plaintiff Jeremy Pinson has brought a claim under the Federal Tort Claims Act ("FTCA") against the United States. The only basis of liability identified in the Court's Pretrial Order is Plaintiff's claim that Officer Vasquez of the United States Penitentiary in Tucson, Arizona ("USP Tucson") breached his duty of care to take reasonable action to protect Plaintiff against an unreasonable risk of harm. (Doc. 162 at 2; *see also* Court's Order dated October 10, 2023 (Doc. 217 at 10-11) ("The Court's summary judgment ruling delineates the scope of the issues relevant for trial). Specifically, Plaintiff claims that she communicated to Officer Vasquez that her cellmate at the time, inmate Ricki Makhimetas, threatened her prior to Makhimetas injuring her. (*Id.*) Also at issue is whether Plaintiff sustained actual damages as a result of Officer Vasquez's act or omissions and whether Plaintiff sustained damages of any kind. (*Id.*)

## II.     The Federal Tort Claims Act

3. Under the Federal Tort Claims Act ("FTCA"), the United States is liable for private torts "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)). The requirement of liability under the "law of the place where the act or omission occurred" refers exclusively to state law. *F.D.I.C. v. Meyer,* 510 U.S. 471, 478 (1994).

4. The subject incident in this matter occurred at USP Tucson, which is within the State of Arizona. Accordingly, Arizona's substantive law governs the United States' liability in this case.

5. To establish negligence under Arizona law, a plaintiff has the burden of proving by a preponderance of the evidence "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal

connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143, 150 P.3d 228, 230 (2007).

### III.   Duty and Breach of Duty

6. Under Arizona law, a duty may arise from a special relationship between the defendant and the plaintiff, including between a jailer and a prisoner. *Fedie v. Travelodge Int'l, Inc.*, 162 Ariz. 263, 265, 782 P.2d 739, 741 (Ariz. App. 1989).  The duty that arises from a special relationship puts the defendant "under an obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (Ariz. 1985).

7. "[D]uty is not presumed; in every negligence case, the plaintiff bears the burden of proving the existence of a duty." *Quiroz v. Alcoa Inc.*, 243 Ariz. 560, 563, 416 P.3d 824, 827 (2018).

8. A "duty is breached when conduct falls below the standard of ordinary care by creating an unreasonable risk of harm to the plaintiff." *Chavez v. Tolleson Elem. School Dist.,* 595 P.2d 1017, 1020 (Ariz. App. 1979) (citations omitted).

9. Plaintiff is serving an aggregate sentence of 252 months for violations of 18 U.S.C. § 871(A), Threats Against the President; 18 U.S.C. § 1001(A)(2), False Statement; 18 U.S.C. § 876(C), Threatening a Juror, and 18 U.S.C. § 876, Mailing Threatening Communications.

10. On July 12, 2019, Plaintiff and Makhimetas were both federal prisoners at USP Tucson and were housed together as cellmates in cell Z02-140 in the "Bravo" Range of USP Tucson's Special Housing Unit ("SHU").

11. The SHU is a housing unit where inmates are securely separated from the general inmate population.  Special housing units help ensure the safety, security, and orderly operation of correctional facilities, and protect the public by providing alternative housing assignments for inmates removed from the general population.

12. On the evening of July 12, 2019, Officer Vasquez, who is employed as a Corrections Officer with the Bureau of Prisons ("Bureau"), was assigned to the USP Tucson

SHU, along with four other SHU Officers and other Bureau staff.

13. On this evening, at or about 9:21pm, Plaintiff and Makhimetas got into a verbal altercation that suddenly developed into a physical altercation in their cell. This altercation was not witnessed by Bureau staff.

14. During the altercation, Makhimetas struck Plaintiff at least once, causing various injuries, including two black eyes, a broken nose, and some bruises and abrasions. Makhimetas did not suffer any injuries.

15. An officer conducting rounds in the SHU observed that both inmates in cell Z02-140, Plaintiff and Makhimetas, appeared to have injuries consistent with a fight. The inmates were removed from the cell, separated, hand-held metal detected, photographed, and medically assessed.

16. In the hours and days that followed the altercation, Plaintiff gave multiple statements to Bureau of Prisons ("Bureau") personnel but made no report of any threat precipitating the fight between her and Makhimetas or that she had communicated these threats to Officer Vasquez.

17. Shortly after the altercation, Plaintiff was seen by a USP Tucson nurse, RN Avilez, who documented that the inmate was hit multiple times in the head with fists and feet. Plaintiff reported that she did not hit back. Plaintiff did not report to Nurse Avilez that Makhimetas had made physical or sexual threats to her prior to the altercation or that she had communicated these threats to Officer Vasquez prior to the assault.

18. Plaintiff did not mention the currently alleged sexual nature of this incident to Nurse Avilez or any other Bureau staff on the evening of the incident or at any time prior to July 15, 2019.

19. At approximately 11:32pm on July 12, 2019, Plaintiff was taken to Tucson Medical Center, where she was treated for her injuries. Plaintiff was discharged back to the jail shortly thereafter with a prescription for Ibuprofen. Plaintiff returned to USP Tucson four hours later, at 3:28am.

20. As confirmed by Tucson Medical Center records, Plaintiff did not report the

1 currently alleged sexual nature of the July 12, 2019, incident to hospital medical staff during this encounter.

21. Two days later, on July 15, 2019, Plaintiff presented a Request for Administrative Remedy that she labelled as "Sensitive PREA" to BOP staff psychologist Dr. Licata during a Suicide Risk Assessment. In the Request, Plaintiff reported that during the July 12, 2019, incident, her cellmate had "assaulted" her by "punching and kicking her face and head repeatedly." She further claimed that, between strikes, he threatened to kill her and tried to forcibly remove her pants "to potentially sexually assault" her. She identified various inmates she believed witnessed the assault who "heard her screams and kicked their cell doors to summon staff."

22. This Request for Administrative Remedy complains that the cell lacked a duress alarm, was not treated as a crime scene, bloody clothes were not retained as evidence, and the FBI was not notified. However, Plaintiff's Request does not mention that her cellmate had been threatening her in the hours leading up to the attack, that she had reported any of these threats to Officer Vasquez, or that Officer Vasquez failed to take protective measures.

23. As a result of notifying Dr. Licata of the report of sexual assault, Plaintiff was evaluated and provided clinical intervention by Dr. Licata that day. In addition to what Plaintiff wrote on her Request for Administrative Remedy, Plaintiff added that her cellmate repeatedly stated during the assault, "I'm gonna show you I'm a fucking man." She claimed her cellmate because upset because she had confronted him over assaulting a mentally ill inmate and that during the fight she did not fight back. Plaintiff admitted to Dr. Licata that she did not report the sexual nature of the assault to Bureau staff immediately following the assault or while at the hospital.

24. Prior to her visit with Dr. Licata, Plaintiff endorsed thoughts of suicide, and so Dr. Licata performed a Suicide Risk Assessment. However, Plaintiff admitted using these suicidal statements in an attempt to obtain an immediate audience with Psychology Staff.

25. Plaintiff presented to Dr. Licata on July 15, 2019 as calm and emotionally

regulated. She was oriented to person, place, time, and situation. Her mood was neutral and her affect was mood congruent. Her speech was within normal lmits in terms of rate and tone, and she matinaned appropriate eye contact. Her words were logical, coherent, future oriented, and goal directed with no evidence of delusional content. Dr. Licata found that Plaintiff "does not appear more vulnerable due to the alleged incident at this time."

26.     Plaintiff did not report to Dr. Licata that Makhimetas had made physical or sexual threats to her prior to the altercation or that she had communicated these threats to Officer Vasquez prior to the assault.

27.     On this same date, Dr. Licata authored a PREA First Responder's Notification Form and notified the USP Tucson Operations Lieutenant about Plaintiff's report earlier that day of the sexual nature of the July 12, 2019, altercation.

28.     As a result, later that day, a USP Tucson registered nurse, Nurse Quesada, performed a PREA evaluation encounter on Plaintiff to assess her injuries. Nurse Quesada asked Plaintiff how her injuries were caused. She advised, "So we were in the cell talking and something I said set him off and he started to attack me. I just laid on the floor in a fetal position well he was kicking me and trying to take my pants off. It seemed like 5 minutes before the officers came."

29.     Plaintiff did not report to Nurse Vasquez that Makhimetas had made physical or sexual threats to her prior to the altercation or that she had communicated these threats to Officer Vasquez prior to the assault.

30.     The following day, on July 16, 2019, another USP Tucson nurse, Nurse Williams, performed a follow-up PREA evaluation on Plaintiff to further assess her injuries. Nurse Williams asked Plaintiff how her injuries were caused, and Plaintiff reported:

> "My celly was being teased by other inmates on the range for beating up a retarded inmate in A-1. He was irritated from being teased and I was lying on my bunk reading my book and he was expressing himself." "I told him he gets no 'browny points' in prison from beating up a retard so he threaten to beat me up." He kept pacing and pacing and repeating things over and over, then he threaten to gouge my eyes out and kill me." "He then stated, 'I am going to tear your ass from your asshole to your nuts so no that you will be no good for no one else!" He kept pacing, I got up to get some

water and that's when he punched me in the back of my head, I went down, seeing stars." "I rolled over to protect my head." "I felt him trying to kick me in the head." "He tried to pull down my shorts saying "I can show you, better than I can tell you bitch!" I would attempt to pull my shorts back up and that's when he would take the opportunity to hit me in the face." He did not rape me.

31. Plaintiff did not report to Nurse Williams that Makhimetas had made physical or sexual threats to her prior to the altercation or that she had communicated these threats to Officer Vasquez prior to the assault.

32. Subsequently, USP Tucson Special Investigative Services conducted a PREA investigation. Special Investigative Services Technician Lawson ("SIS Lawson") was the lead investigator.

33. On July 17, 2019, SIS Lawson interviewed Plaintiff. He asked her why she did not report the PREA allegations to the SIS Technician or the Lieutenant on the day of the incident when brought to the outside hospital. Plaintiff indicated that she likes her statements "to be in writing." When asked to describe what happened prior to the physical altercation, Plaintiff said she "didn't want to listen to war stories" from her cellmate and that she told her cellmate, "Nobody in prison gets browny points for beating up a retard." Plaintiff believed her cellmate thought he had to put her "back in [her] place." Plaintiff denied striking her cellmate.

34. SIS Lawson spoke with Makhimetas on the same day. He asked him to describe what happened on July 12, 2019, in cell 140. Makhimetas reported to him that he and Plaintiff were arguing, and at one point, Plaintiff got into his face. At one point, he felt so threatened that they fought. Makhimetas initially denied striking Plaintiff, but later admit that he did. At no point did Makhimetas indicate that he had been threatening her or that Plaintiff reported any of these threats to Officer Vasquez.

35. SIS Lawson also spoke with other inmates who were present on the Special Housing Unit and who Plaintiff identified in her PREA Complaint as witnesses to this event. None of the statements from these witnesses corroborate Plaintiff's claim that Makhimetas had been threatening her prior to the altercation, that she had reported any of these threats to

Officer Vasquez, or that Officer Vasquez failed to take protective measures.

36.     Plaintiff submitted an SF95 Claim for Damage, Injury, or Death to the Federal Bureau of Prisons on March 2, 2021.  In it, Plaintiff reported:

> On 6-30-19, I was cell rotated into Cell 140 on B-Range in USP Tucson.  The cell was not equipped with a duress alarm.  Multiple requests to fix the alarm were not acted upon by staff. On 7-12-19 my cellmate attempted to sexually assault me and brutally beat me with closed fists and feet.  As a result of no duress alarm I was helpless to summon staff assistance.  I sustained serious injuries and was hospitalized. Upon return from the hospital I wasn't examined by a doctor nor provided the pain medication prescribed by the hospital medical provider.

37.     Though Plaintiff's SF95 complained of the lack of a duress alarm and of the lack of medical care, it does not complaint of the fact that she received physical and sexual threats from Makhimetas before the assault, that she communicated these threats to Officer Vasquez, or that Officer Vasquez failed to take protective measures.

38.     The earliest independent evidence that Plaintiff reported that Makhimetas had been threatening her earlier in the day with physical or sexual violence and that she had reported these threats to Officer Vasquez is in Plaintiff's First Amended Complaint.  (Doc. 22 at 5.)  However, in this Complaint she states that she communicated these threats to Officer Vasquez in the form of two written notes.  The First Amended Complaint does not reference any verbal communication of these threats to Officer Vasquez prior to the altercation.  "A party … who verifies a pleading, should be presumed to have known its contents, and it should be received in evidence, subject to such explanation as the party may see fit to offer."  *Evans v. Daniel,* 289 F. 335, 339 (9th Cir. 1923) (citations omitted).  Thus, where "portions of the … complaint [are] not offered as evidence of any fact, other than the fact that the plaintiff made the statements contained in them, and such statements, as far as they [are] contradictory of or inconsistent with his statements as a witness, [are] as much admissible, for the purpose of impeaching him, as if they were contained in a letter written by him to a third person, or in an affidavit…" *Id.* at 338.

39.     Based on the testimony and documentary evidence, and weighing the

credibility of the witnesses, the Court finds that Plaintiff did not communicate to Officer Vasquez that Makhimetas had threatened to physically or sexually abuse her, verbally or in writing, prior to the altercation. Rather, in Plaintiff's prior statements at the time of the incident, during the investigation, interviews with prison personnel, medical professionals, and her psychologist, and her administrative filings, Plaintiff never alleged she had been threatened or that she reported any threats, but rather that the assault was a spontaneous attack by her cellmate without warning.

40. Plaintiff has been previously convicted of providing false statements to a federal marshal, a felony offense. The Court factors this conviction into its assessment of Plaintiff's credibility.

41. In consideration of the evidence presented, the testimony received, and the credibility of the witnesses, the Court finds that Officer Vasquez did not breach a duty of care to take reasonable action to protect Plaintiff against unreasonable risk of physical harm.

### IV. Causation and Damages

42. Causation requires both "cause-in-fact" and "legal (or proximate) causation." *Boisson v. Ariz. Bd. of Regents*, 236 Ariz. 619, 622, 343 P.3d 931, 934 (App. 2015).

43. "[C]ause-in-fact exists if the defendant's act helped cause the final result and if that result would not have happened without the defendant's act." *Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983).

44. "[T]he general rule is that a defendant may be held liable if his conduct contributed to the result and if that result would not have occurred 'but for' defendant's conduct." *Id.*

45. Proximate cause, however, "is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have occurred, which connection is broken when a new or subsequent cause intervenes so as to become the sole factor producing the injurious result to the exclusion of the negligence of the first wrongdoer in its operation as an efficient factor therein." *Salt River Valley Water Users' Ass'n v. Cornum*, 49 Ariz. 1, 11, 63 P.2d 639, 644

(1937) (quotation omitted).

46. "A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Robertson v. Sixpence Inns of Am.,* 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990).

47. "Not every foreseeable risk is an unreasonable risk." *Rogers v. Retrum*, 170 Ariz. 399, 402, 825 P.2d 20, 23 (App. 1991).

48. "It does not suffice to establish liability to prove (a) that defendant owed plaintiff a duty of reasonable care; (b) that an act or omission of defendant was a contributing cause of injury to plaintiff; and (c) that the risk of injury should have been foreseeable to defendant." *Id.*

49. The plaintiff also must prove that the foreseeable risk was unreasonable. *Id.*

50. There is no causal connection between any act or omission on the part of Officer Vasquez and any injury Plaintiff sustained as a result of the July 12, 2019 altercation. Plaintiff did not sustain any damages as a result of any act or omission on the part of Officer Vasquez.

51. "Since damages are an element of a cause of action for negligence, nominal damages cannot be awarded where there is a failure to prove those damages." *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz. App. 289, 294, 506 P.2d 1074, 1079 (1973).

52. Dr. Licata and Dr. Hayden testified credibly and consistently with their contemporaneous psychological records.

53. As confirmed by Dr. Licata's testimony and psychological records, Plaintiff did not appear to be more vulnerable as a result of the July 12, 2019 incident.

54. Dr. Hayden, a Bureau psychologist, supports that Plaintiff was diagnosed with Post Traumatic Stress Disorder in June 2023. However, this diagnosis was the result of numerous traumas over the course of her life and imprisonment over the course of many years. He has not formed the opinion during the course and scope of his treatment of Plaintiff

that, to any degree of psychological probability, but for the July 12, 2019, incident, Plaintiff would not have suffered Post Traumatic Stress Disorder.

55.  The Federal Bureau of Prisons provided Plaintiff medical care without charge.

56.  Plaintiff did not suffer any lost wages, medical expenses, or any other form of economic damages.

**V.  Conclusion**

57.  The United States is not liable for negligence under the FTCA.

58.  The Clerk shall enter judgment in favor of the United States.

Respectfully submitted this 27th day of October, 2023.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> *s/ Michael L. Linton*
> MICHAEL L. LINTON
> SARAH S. LETZKUS
> Assistant U.S. Attorneys
> *Attorneys for the United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and a copy has been mailed via U.S. Mail to the following, who is not a CM/ECF registrant:

Jeremy Pinson
Fed. Reg. # 16267-064
U.S. Penitentiary Tucson
PO Box 24550
Tucson, AZ 85734
*Plaintiff Pro Se*

s/ *M. Parker*