United States District Court
District of Arizona

Jeremy Pinson,
   Plaintiff,

v.                    No. 19-cv-00422-RM

United States,
   Defendant

Plaintiff's Proposed Findings of Fact and Conclusions of Law

Comes now the pro se plaintiff pursuant to Doc. 211, which this Court extended from the bench on the last day of trial by 10 days, and files her Proposed Findings of Fact and Conclusions of Law, pursuant to Fed. R. Civ. P. 52(a)(1).

## I. Proposed Findings of Fact

1. The Federal Bureau of Prisons required its cells at USP Tucson via Special Post Orders to be equipped with duress buttons as the Special Post Orders mandated a course of action upon their activation which could not occur unless they were in "Each Cell" and operational.

2. At the summary judgment stage, defendant misled the Court that no policy or other source required "each cell" in the SHU be equipped with a functioning duress alarm (Doc. 77 at 3) as a result of this

1

misrepresentation and the withholding of the Special Post Orders from plaintiff during discovery this Court ruled against plaintiff's central claim stating "Plaintiff has not presented evidence or pointed to a statute, regulation or policy requiring that a duress alarm system be used or fully operable." (DOC-117 at 15).

3. In addition to the Special Post Orders being withheld from plaintiff, defendant also stated during discovery that, in Response to Plaintiff's Request for Admission No. 5 which stated "USP Tucson SHU Cell 140 did not have an operable duress alarm on July 12, 2019", the United States' Response was: "Unknown, therefore deny", on Aug. 22, 2022.

4. At trial, several witnesses testified that Special Housing Unit Cell 140 did not in fact have a duress alarm on July 12, 2019.

5. On July 12, 2019 Plaintiff and Ricki Makhimetas, a convicted sex offender, were both federal prisoners at USP Tucson and were housed together as cellmates in Cell 202-140 in the "Bravo" Range of USP Tucson's SHU.

6. On the evening of July 12, 2019 Officer Vasquez, who is employed as a Corrections Officer with the Bureau of Prisons, was assigned to the USP Tucson SHU.

7. At Summary Judgment defendant contended there were no issues with the duress alarms in Cell 140 (Doc. 117 at 11), at trial several witnesses credibly testified

2

there was no duress alarm in plaintiff's cell, all other cells were operational. No witness denied this fact.

8. Plaintiff credibly testified that she asked Vasquez to be removed from Cell 140 with Makhimetas, prior to 9:20 p.m.

9. On July 12, 2019 at 9:20 p.m. Vasquez discovered Pinson with numerous serious injuries including two black eyes, a broken nose, bruises, lacerations and abrasions. Makhimetas had no injuries.

10. At trial, under direct examination Vasquez testified he could not remember speaking to inmates, could not remember the staff members names on shift with him, or a number of other key details. Then, under defense examination he changed this to a denial.

11. At trial, documentary evidence showed that Vasquez charged Pinson and Makhimetas with a Prohibited Act: Code 201 - Fighting. The report stated, in part, "both inmates in Cell 140 had injuries". This was not supported by a medical exam of inmate Makhimetas.

12. At trial the prison Discipline Hearing Officer testified she expunged Vasquez's charges against Pinson. The DHO Report stated that Sec. 11 of Vasquez's report and medical reports did not support the charges. The DHO did not find Vasquez credible.

3

13. No BOP staff member treated Cell 140 as a crime scene. Several acknowledged at trial that assault is a crime but inexplicably noone notified the FBI then nor afterward a crime had occurred.

14. Plaintiff complained, in a written complaint on July 14, 2019 what Machimetas had done to her. She handed it to Dr. Samantha Licata the next morning.

15. At 11:32pm on July 12, 2019 plaintiff was taken to the Emergency Room at Tucson Medical Center. A CT imaging scan revealed a broken nose and other injuries. Upon return from the hospital she was never examined by a medical doctor nor given pain medication on nor after July 12, 2019.

16. Plaintiff submitted an SF-95 Claim for Damage, Injury or Death to the Federal Bureau of Prisons on Mar. 2, 2021.

17. Based on the testimony and documentary evidence, and weighing the credibility of the witnesses, the Court finds that Plaintiff did communicate to Officer Vasquez that Machimetas had threatened to physically or sexually abuse her prior to the altercation.

18. Based upon the July 2019 trauma, and others in BOP custody, USP Tucson Chief Psychologist Dr. James Hayden diagnosed plaintiff with severe Post-Traumatic Stress Disorder.

4

## II. Conclusions of Law

1. The Court has subject matter jurisdiction over Plaintiff's claims pursuant Federal Tort Claims Act ("FTCA"). 28 U.S.C. 1346(b) and 2671 et seq.

2. The FTCA provides that the United States may be held liable for damages caused by the negligent or wrongful act or omission of an employee of the government within the scope of his employment under circumstances where the United States, if a private person, would be responsible to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. 1346(b); Valadez-Lopez v. Chertoff, 656 F.3d 851, 855 (9th Cir. 2011); Stuart v. United States, 23 F.3d 1483, 1488 (9th Cir. 1994)(upholding FTCA suit).

3. Because the place of plaintiff's injury, at USP Tucson, in Arizona, the Court applies Arizona law. 28 U.S.C. 1346(b)(1).

4. The waiver provided by the FTCA is strictly construed. Valadez-Lopez, 656 F.3d at 855.

5. The Court finds the Special Post Orders defendant

5

denied existed, for years, did exist. And, outlined an officer's duty upon the activation of duress alarm buttons, a duty the absence of one would directly prevent execution of.

6. The Court finds that Vasquez was acting in the scope of his employment with the United States.

7. The Court finds that Vasquez failed to act to protect plaintiff on July 12, 2019 from Ricki Makhimetas.

8. The Court finds plaintiff was injured, physically and psychologically, as a result of BOP's failure to follow its Special Post Orders, which by failing to maintain duress alarm buttons in each cell led officers to have no means to respond as mandated. Combined with Vasquez's failure to act, plaintiff's own injuries were caused by a breach of 18 U.S.C. 4042(a).

### A. Damages

1. The Ninth Circuit has established three "basic steps for calculating pecuniary damages under the FTCA: (1) compute the value of the plaintiff's loss according to state law; (2) deduct federal and state taxes from the

portion for lost earnings; and (3) discount the total award to present value." Shaw v. United States, 741 F.2d 1202, 1205 (9th Cir. 1984). "Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, and diminished earning capacity." Wendelken v. Superior Court, 137 Ariz. 455, 671 P.2d 896 (Ariz. 1983).

2. Punitive damages are not available in an FTCA action. 28 U.S.C. 2674.

3. Pinson has demanded recovery for non-economic damages, she has proven based on the record, that an award for pain and suffering has a monetary value of $299,000.00

4. Pinson does not seek economic damages.

5. The award for pain and suffering is based on the record as a whole. Fifer v. United States, Case No. CV-12-01753-PHX-NVW (D. Ariz. Jan. 26, 2018)(citing Jacobs v. United States, 2013 WL 9639663 (D. Ariz June 18, 2013).

7

6. An award for future medical expenses requires persuasive evidence that "the need for future care [is] reasonably probable and there [is] some evidence of the probable nature and cost of the future treatment." Saide v. Stanton, 135 Ariz. 76, 77, 659 P.2d 35, 36 (1983). "The amount of damages may be established with proof of a lesser degree of certainty than required to establish the fact of damages." Rancho Pescado, Inc. v. NW. Mut. Life Ins. Co., 140 Ariz. 174, 184, 680 P.2d 1235, 1245 (App. 1984).

7. The prospect of future medical treatment for PTSD is significant.

8. BOP paid for Pinson's hospital bill. As long as she remains in BOP custody, the prison will pay her medical expenses. Her injuries on July 12, 2019 were the proximate cause of her physical pain and mental anguish.

## C. Duty and Breach

1. Under Arizona law, a duty may arise from a special relationship between the defendant and the plaintiff, including between a jailer and a prisoner. Fedie v. Travelodge Int'l. Inc., 162 Ariz. 263, 265, 782 P.2d 739, 741 (Ariz. App. 1989). The duty that arises from a special relationship that puts the defendant "Under an

8

obligation to use some care to avoid or prevent injury to the plaintiff." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (Ariz. 1985).

2. A "duty is breached when conduct falls below the standard of ordinary care by creating an unreasonable risk of harm to the plaintiff." *Chavez v. Tolleson Elem. School Dist.*, 595 P.2d 1017, 1020 (Ariz. App. 1979).

3. At trial the government made much of the 48 hours that passed before plaintiff reported the sexual nature of Makhimetas' attack to her psychologist. And framed the injuries she received as lamentable but her own fault or Makhimetas', not any staff member. This case turns on whether staff conduct fell below the standard of ordinary care by creating an unreasonable risk to her, not whether she delayed in her reporting nor the other inconsequential complaints about her. See: *Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 409-10, 207 P.2d 654, 662-63 (Ct. App. 2008)(declining to permit victim's conduct to factor into liability of tortfeasor).

4. The United States breached its duty to plaintiff and is liable for her injuries.

### D. Causation

1. Plaintiff proved causation because (1) if she'd had a duress alarm she could've lunged from the ground

9

for it during the attack, instead it was nearly 5-minutes until other inmates activated their alarms prolonging the attack, (2) Officers could've acted on her reports she was being threatened.

2. "The proximate cause of an injury is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces an injury, and without which the injury would not have occurred." (Doc. 117 at 24).

3. "The defendant's act or omission need not be a large or abundant cause of the injury; even if defendant's conduct contributes only a little to plaintiff's damages, liability exists." (id).

## Conclusion

1. The United States is liable for negligence under the FTCA.
2. The Clerk shall enter judgment in favor of the Plaintiff.

Respectfully submitted this 16th of Nov. 2023.

Jeremy Pinson

## Certificate of Service

I certify service upon the Court via U.S. Mail - postage-prepaid on 11-16-23 via prison staff, it will be received by AUSA Letzkus/Linton via ECF Notice due to no access to a photocopier.

Jeremy Pinson

11